**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB,**<br><br>　　　　**Plaintiffs,**<br><br>　　**v.**<br><br>**Luminati Networks Ltd. and EMK Capital LLP,**<br><br>　　　　**Defendants.** | **Civil Action No. 2:20-cv-00073**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Teso LT, UAB ("Teso"), Metacluster LT, UAB ("Metacluster"), and Code200, UAB ("Code200") (collectively, "Oxylabs") file this Complaint against Defendant Luminati Networks Ltd. ("Luminati") and EMK Capital LLP ("EMK") (collectively, "Defendants"). Oxylabs alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

### SUMMARY OF LAWSUIT

1.　　Luminati and its owner EMK have been spreading unethical and false statements in communications and advertisements about Oxylabs, as well as Luminati's allegedly "patented" technology. These groundless communications and advertisements have been sent to Oxylabs' customers, potential customers, and business partners, as well as the proxy marketplace generally. The lies are part of Defendants' broader, self-described "war" that they are waging against Oxylabs, a "war" that Defendants hope will ultimately lead to Oxylabs either going out of business or being acquired by Defendants at a favorable price—leaving Luminati as the sole proxy provider

in the marketplace. But Oxylabs has not been and will not be deterred by Defendants' meritless patent-infringement claims, threats, and false advertisements. Instead, Oxylabs, as the only organization in the market capable of defending its rights, brings this lawsuit to seek redress for Defendants' actionable legal wrongs, including Defendants' unfair competition, false advertisements, defamatory statements, false patent marking, and tortious interference with contract and prospective business relations with Oxylabs' current and potential clients and business partners.

**PARTIES**

2.      Teso is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

3.      Metacluster is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

4.      Code200 is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

5.      Luminati is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev St., Netanya 42507, Israel.

6.      EMK is an entity organized and existing under the laws of the United Kingdom with its principal place of business at Lex House, 17 Connaught Place, London, W2 2ES, United Kingdom. EMK is a private equity firm established by Edmund Lazarus and Mark Joseph, EMK's Managing Partners. EMK announced its acquisition of Luminati in August 2017. EMK's representatives—specifically, Messrs. Lazarus and Joseph—sit on and control Luminati's Board of Directors. Mr. Joseph is Luminati's Chairman.

**JURISDICTION AND VENUE**

7.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §

2

1331 because one or more of Oxylabs' causes of action arise under the laws of the United States, including 15 U.S.C. § 1125(a) and 35 U.S.C. § 292(b). The Court has supplemental jurisdiction over Oxylabs' state-law claims under 28 U.S.C. § 1367(a). The Court may grant declaratory and other relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

8.      The Court has personal jurisdiction over Defendants. Defendants, via themselves or their subsidiaries or affiliates, regularly conduct and transact business throughout the United States, in the State of Texas, and within the Eastern District of Texas. Defendants also directed the false advertisements and false statements at issue in this lawsuit to customers and potential customers within the State of Texas, including the Eastern District of Texas. Additionally, Luminati filed (and EMK caused Luminati to file) meritless patent-infringement claims against Oxylabs in the Eastern District of Texas.

9.      Venue is proper in the Eastern District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Eastern District of Texas and/or because Defendants are subject to personal jurisdiction in the Eastern District of Texas. Venue is also proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(c)(3), as Defendants are not residents of the United States and, accordingly, they may be sued in any judicial district.

## FACTS

10.     Oxylabs is a leading provider of proxy services. Oxylabs' products include, but are not limited to, residential proxies, data center proxies, and its Real-Time Crawler product. *See generally* https://oxylabs.io/.

11.     Luminati is one of Oxylabs' competitors. Luminati also offers residential proxies and data center proxies, as well as an "Unblocker" product (which Luminati describes as

"automated unblocking software to reach your target sites"). *See generally* https://luminati.io/.

12.     Luminati is generally thought to be the largest—and most expensive—company in the proxy marketplace.

13.     Oxylabs entered the residential proxy market after Luminati and quickly became Luminati's largest competitive threat. Customers flocked to Oxylabs rather than Luminati for various reasons, including but not limited to Oxylabs' products' affordability, Oxylabs' pricing structure, Oxylabs' unique IPs, Oxylabs' flexible payment structures, and Oxylabs' superior customer service and products.

14.     After Oxylabs entered the residential proxy market, EMK attempted to acquire Oxylabs. When EMK's acquisition attempt failed, EMK caused Luminati to bring a meritless patent-infringement lawsuit against Oxylabs and otherwise engage in the conduct described herein. The Court recently dismissed Luminati's patent-infringement claims with prejudice in that case, pursuant to a settlement agreement. Notably, Luminati chose to settle its claims rather than proceed to litigate Oxylabs' claims that Luminati's patents were invalid and not infringed.

15.     EMK invests in companies over periods of three to seven years. In other words, EMK invests in a company but intends to sell the company within three to seven years. Accordingly, EMK is attempting to maximize Luminati's value in the hopes of a successful exit sale. According to EMK, its governance role is an essential component in its portfolio companies' value creation.

16.     Throughout the last several years, Luminati, at EMK's control and direction, has continuously threatened Oxylabs' customers, potential customers, and business partners with meritless allegations of patent infringement. Luminati has also advised Oxylabs' customers, potential customers, and business partners that Oxylabs' products are illegal to use and that it is illegal to

sell products using Oxylabs' software development kits. Luminati further threatened to bring pa-
tent-infringement lawsuits against Oxylabs' customers and partners if such customers and partners
continue to do business with Oxylabs. Luminati also requires (or attempts to require) its customers
not to do business with Oxylabs, on account of Oxylabs' purported infringement of Luminati's
patents. Luminati has no good-faith basis for such threats, statements, and conduct—in fact, Lu-
minati has made these threats and statements in bad faith because Luminati knows that its patents
do not cover Oxylabs products and/or are invalid.

17.    Luminati and EMK have also falsely represented the scope of Luminati's patents.
For example, Luminati has claimed that its patents cover a "residential" proxy network, when they
do not. Luminati has also falsely represented that its patents cover "servers and/or residential proxy
nodes located in the United States," when they do not. Luminati has similarly falsely claimed that
only Luminati can offer a "residential proxy service," when this is not true. Additionally, Luminati
has claimed that it is "the only proxy provider to use super proxies and the only one that has been
given permission to use them in the US." This claim is likewise false. EMK has stated that "Lu-
minati's technology and patent portfolio allow Luminati to operate the only mass-scale residential
IP proxy network in the world." This statement is false, as Luminati does not have technology or
patents that allow it to operate "the only mass-scale residential IP proxy network in the world."
EMK's motivation for this false claim is to deceive the public, customers, and potential customers.

18.    On its "patent marking" webpage, Luminati lists approximately fifteen United
States patents and falsely claims that "[a]ll Luminati's products are covered by the patents[.]" *See*
https://luminati.io/patent-marking. This claim is false because, at a minimum, not "all" of Lumi-
nati's products are covered by all of the listed patents. As but one example, Luminati's data center
proxy product is not covered by one or more of the listed patents as, according to Luminati, at least

two of the listed patents allegedly only cover "residential" proxies. Luminati's motivation for falsely claiming that "all" of its products are covered by the listed patents is to deceive the public, customers, and potential customers.

19.     After Luminati's meritless patent-infringement lawsuit was dismissed with prejudice, Oxylabs issued certain press releases. Luminati has falsely represented that Oxylabs' press releases are "incorrect and contrary to the resolution of the dispute."

20.     Luminati has falsely accused Oxylabs of committing false advertising, tortious interference with contract, misappropriation of trade secrets, and intentional unauthorized access of a computer system. Oxylabs has not engaged in false advertising, has not tortiously interfered with any contract, has not misappropriated any trade secret, nor has it engaged in intentional unauthorized access of a computer system.

21.     At the same time that it has been denigrating Oxylabs in the marketplace, Luminati has intentionally copied the look, feel, and design of Oxylabs' website, as shown below:

**Oxylabs' Web Design (Example No. 1):**



**Luminati's Web Design (Example No. 1):**



**Oxylabs' Web Design (Example No. 2):**



**Luminati's Web Design (Example No. 2):**



**Oxylabs' Web Design (Example No. 3):**



**Luminati's Web Design (Example No. 3):**



**Oxylabs' Web Design (Example No. 4):**



**Luminati's Web Design (Example No. 4):**



**Oxylabs' Web Design (Example No. 5):**



**Luminati's Web Design (Example No. 5):**



22.     Defendants' motivation for their false statements, meritless threats, and other ac-

tionable wrongs addressed by this lawsuit is their desire to harm Oxylabs. For example, Luminati

has told marketplace participants that Luminati will "take Oxylabs out of business." Additionally,

Luminati and EMK are attempting to weaken Oxylabs so that Luminati and EMK may then acquire Oxylabs at an unjustified and decreased price. Luminati, at EMK's control and direction, has previously brought patent-infringement lawsuits for the purpose of making defendants go out of business. For example, Luminati has previously sued IP Ninja and BI Science and, to date, it appears as if at least one of these entities has gone out of business on account of the lawsuit. While this is also Luminati's goal with respect to Oxylabs, Oxylabs has sufficient resources to defend itself from Luminati's meritless lawsuits in court.

23.     Defendants caused their false advertisements and false statements to enter interstate commerce. For example, Defendants' false advertisements and false statements have been distributed through Internet communications and discussions with Oxylabs' customers, potential customers, and business partners.

24.     All of Luminati's conduct complained of herein was either directed or controlled by EMK.

### COUNT I
### (UNFAIR COMPETITION AND FALSE ADVERTISING
### UNDER THE LANHAM ACT—AGAINST LUMINATI AND EMK)

25.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

26.     Defendants made a false or misleading statement of fact about one or more products.

27.     Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers.

28.     The deception was material, in that it is likely to influence the consumer's purchasing decision.

29.     The product is in interstate commerce.

30.     Oxylabs has been or is likely to be injured as a result of the statement at issue.

## COUNT II
### (FALSE PATENT MARKING—AGAINST LUMINATI AND EMK)

31.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

32.     Defendants have marked upon, affixed to, or used in advertising in connection with one or more unpatented articles, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public.

33.     Oxylabs has suffered a competitive injury as a result of Defendants' false patent marking.

## COUNT III
### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACT—AGAINST LUMINATI AND EMK)

34.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

35.     Oxylabs has valid contracts.

36.     Defendants willfully and intentionally interfered with the contracts.

37.     The interference proximately caused Oxylabs' injury.

38.     Oxylabs incurred actual damage or loss.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS—AGAINST LUMINATI AND EMK)

39.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

40.     There was a reasonable probability that Oxylabs would have entered into a business relationship with a third person.

41.     Defendants intentionally interfered with the relationship.

42.     Defendants' conduct was independently tortious or unlawful.

43.     The interference proximately caused Oxylabs' injury.

44.     Oxylabs suffered actual damage or loss.

### COUNT V
### (BUSINESS DISPARAGEMENT—AGAINST LUMINATI AND EMK)

45.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

46.     Defendants published false and disparaging words about Oxylabs, including its economic interests.

47.     Defendants published the words with malice and without privilege.

48.     The publication caused special damages, including but not limited to lost revenues and profits.

### COUNT VI
### (DEFAMATION—AGAINST LUMINATI AND EMK)

49.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

50.     Defendants published a false and defamatory statement of fact.

51.     The statement referred to Oxylabs.

52.     With regard to the truth of the statement, Defendants were acting with actual malice, negligent, or are liable without regard to fault.

53.     Oxylabs suffered pecuniary injury and/or injury is presumed.

### COUNT VII
### (UNFAIR COMPETITION—AGAINST LUMINATI)

54.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth

herein.

55.     Oxylabs' product, including its website, was created through extensive time, labor, skill, and money.

56.     Luminati used that product in competition with Oxylabs, thereby gaining a special advantage in that competition (i.e., a "free ride") because Luminati was burdened with little or none of the expense incurred by Oxylabs.

57.     Oxylabs suffered commercial damages as a result of Luminati's conduct.

### COUNT VIII
### (CONSPIRACY—AGAINST LUMINATI AND EMK)

58.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

59.     Luminati and EMK were members of a combination of two or more persons.

60.     The object of the combination was to accomplish (i) an unlawful purpose or (ii) a lawful purpose by unlawful means.

61.     The members had a meeting of the minds on the object or course of action.

62.     One of the members committed an unlawful, overt act to further the object or course of action.

63.     Oxylabs suffered injury as a proximate result of the wrongful act.

### JURY DEMAND

64.     Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

65.     Oxylabs requests that the Court:

A.      Hold Defendants liable on one or more of Oxylabs' causes of action;

B.     Declare that Defendants' statements and advertisements are false;

C.     Declare that Luminati's products are not covered by all of Luminati's patents;

D.     Grant an injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensee, successors, and assigns, and those in active concert or participation with any of them, from continuing to violate Oxylabs' rights, continuing their false advertisements, and continuing to falsely mark Luminati's products with patents that do not cover such products;

E.     Award Oxylabs actual, compensatory, general, special, lost profits, lost revenues, exemplary, and/or punitive damages;

F.     Order Defendants to disgorge any monies, gains, profits, and/or advantages that are attributable to the acts complained of herein;

G.     Require Defendants to reimburse Oxylabs for corrective advertisements;

H.     Award Oxylabs its costs, attorney's fees, and expenses;

I.     Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law; and

J.     Grant Oxylabs such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: March 5, 2020

Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiffs Teso LT, UAB,*
*Metacluster LT, UAB, and Code200, UAB*