IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB,<br><br>   Plaintiffs,<br><br>   v.<br><br>Luminati Networks Ltd. and EMK Capital LLP,<br><br>   Defendants. | Civil Action No. 2:20-cv-00073<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**

  Plaintiffs Teso LT, UAB ("Teso"), Metacluster LT, UAB ("Metacluster"), and Code200, UAB ("Code200") (collectively, "Oxylabs") file this First Amended Complaint against Defendant Luminati Networks Ltd. ("Luminati") and EMK Capital LLP ("EMK") (collectively, "Defendants"). Oxylabs alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

## SUMMARY OF LAWSUIT

  1. Luminati and EMK have been spreading unethical and false statements in communications and advertisements about Oxylabs, as well as Luminati's allegedly "patented" technology. These groundless communications and advertisements have been sent to Oxylabs' customers, potential customers, and business partners, as well as the proxy marketplace generally. Defendants hope that their actions will ultimately lead to Oxylabs either going out of business or being acquired by Defendants at a favorable price—leaving Luminati as the sole proxy provider in the marketplace. But Oxylabs has not been and will not be deterred by Defendants' meritless patent-

1

infringement claims, threats, and false advertisements. Instead, Oxylabs brings this lawsuit to seek redress for Defendants' actionable legal wrongs, including Defendants' false advertisements, defamatory statements, false patent marking, and tortious interference with contract and prospective business relations with Oxylabs' current and potential clients and business partners.

### PARTIES

2. Teso is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

3. Metacluster is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

4. Code200 is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

5. Luminati is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev St., Netanya 42507, Israel.

6. EMK is an entity organized and existing under the laws of the United Kingdom with its principal place of business at Lex House, 17 Connaught Place, London, W2 2ES, United Kingdom.

### JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because one or more of Oxylabs' causes of action arise under the laws of the United States, including 15 U.S.C. § 1125(a) and 35 U.S.C. § 292(b). The Court has supplemental jurisdiction over Oxylabs' state-law claims under 28 U.S.C. § 1367(a). The Court may grant declaratory and other relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

8. The Court has personal jurisdiction over Defendants. Defendants, via themselves

or their subsidiaries or affiliates, regularly conduct and transact business throughout the United States, in the State of Texas, and within the Eastern District of Texas. Defendants also directed the false advertisements and false statements at issue in this lawsuit to customers and potential customers within the State of Texas, including the Eastern District of Texas. Additionally, Luminati filed (and EMK caused Luminati to file) three meritless patent-infringement lawsuits against Oxylabs in the Eastern District of Texas,[1] as well as lawsuits in the Eastern District of Texas against BI Science (a/k/a GeoSurf), IP Ninja, and NetNut. Luminati maintains "exit nodes" associated with its residential proxy service within the State of Texas, and has customers in the State of Texas to whom it directed the false advertisements and false statements at issue in this lawsuit. Accordingly, Luminati does business in the State of Texas and such business has given rise, in whole or in part, to Oxylabs' claims. Defendants have committed torts, in whole or in part, within the State of Texas, as described in more detail herein. Defendants' contacts with the State of Texas have also given rise to Oxylabs' claims, including but not limited to the false advertisements and communications at issue in this lawsuit which were directed to individuals and entities located within the State of Texas. Defendants purposefully directed the activities giving rise to Oxylabs' claims toward the State of Texas. For example, Defendants' press releases and communications at issue in this lawsuit have been sent or directed to individuals and entities located within the State of Texas. Further, the websites at issue in this lawsuit are available to individuals and entities within the State of Texas and, on information and belief, such individuals and entities have visited such websites. Defendants have also purposefully availed themselves of the privileges of conducting

---

[1] *See Luminati Networks Ltd. v. UAB Tesonet*, Case 2:18-cv-00299-JRG (E.D. Tex.) ("First Lawsuit"); *Luminati Networks Ltd v. Teso LT, UAB et al.*, Case 2:19-cv-00395-JRG (E.D. Tex.) ("Second Lawsuit"); *Luminati Networks Ltd. v. Code 200, UAB et al.*, Case 2:19-cv-00396-JRG (E.D. Tex.) ("Third Lawsuit").

activities within the States of Texas. Additionally, the exercise of personal jurisdiction over Defendants is fair and reasonable. The burden on the Defendants of litigating in this forum is slight, especially considering the numerous lawsuits filed in this Court by Luminati. This forum has a substantial interest in adjudicating the lawsuit, especially in view of Luminati's numerous lawsuits filed in this forum. Oxylabs has an interest in obtaining convenient and effective relief in this forum. The interstate judicial system has an interest in resolving this controversy efficiently before this Court, and the shared interests of the states would not be affected by this suit proceeding.

9.  Solely in the alternative, personal jurisdiction exists over Defendants under Federal Rule of Civil Procedure 4(k)(2)(i) because (i) Defendants are not subject to jurisdiction in any state's courts of general jurisdiction and (ii) exercising jurisdiction is consistent with the United States Constitution and laws. Under Rule 4(k)(2)(i), Defendants' contacts with the United States are sufficient to meet the requirements of due process under United States law. As described herein, Defendants, via themselves or their subsidiaries or affiliates, regularly conduct and transact business throughout the United States. Defendants also directed the false advertisements and false statements at issue in this lawsuit to customers and potential customers within the United States. Additionally, Luminati filed (and EMK caused Luminati to file) three meritless patent-infringement lawsuits against Oxylabs in the Eastern District of Texas, as well as lawsuits in the Eastern District of Texas against BI Science (a/k/a GeoSurf), IP Ninja, and NetNut. Luminati maintains "exit nodes" associated with its residential proxy service within the United States, and has customers in the United States to whom it directed the false advertisements and false statements at issue in this lawsuit. Accordingly, Luminati does business in the United States and such business has given rise, in whole or in part, to Oxylabs' claims. Defendants have committed torts, in whole or in part, within the United States, as described in more detail herein. Defendants' contacts with the

United States have also given rise to Oxylabs' claims, including but not limited to the false advertisements and communications at issue in this lawsuit which were directed to individuals and entities located within the United States. Defendants purposefully directed the activities giving rise to Oxylabs' claims toward the United States. For example, Defendants' press releases and communications at issue in this lawsuit have been sent or directed to individuals and entities located within the United States. Further, the websites at issue in this lawsuit are available to individuals and entities within the United States and, on information and belief, such individuals and entities have visited such websites. Defendants have also purposefully availed themselves of the privileges of conducting activities within the United States. Additionally, the exercise of personal jurisdiction over Defendants is fair and reasonable. The burden on the Defendants of litigating in this forum is slight, especially considering the numerous lawsuits filed before this Court by Luminati. This forum has a substantial interest in adjudicating the lawsuit, especially in view of Luminati's numerous lawsuits filed in this forum. Oxylabs has an interest in obtaining convenient and effective relief in this forum. The interstate judicial system has an interest in resolving this controversy efficiently before this Court, and the shared interests of the states would not be affected by this suit proceeding.

10. Venue is proper in the Eastern District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Eastern District of Texas and/or because Defendants are subject to personal jurisdiction in the Eastern District of Texas. Venue is also proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(c)(3), as Defendants are not residents of the United States and, accordingly, they may be sued in any judicial district.

## FACTS

11. Oxylabs is a leading provider of proxy services. Oxylabs' products include, but are not limited to, residential proxies, data center proxies, and its Real-Time Crawler product. *See generally* https://oxylabs.io/.

12. Luminati is one of Oxylabs' competitors. Luminati also offers residential proxies and data center proxies, as well as an "Unblocker" product (which Luminati describes as "automated unblocking software to reach your target sites"). *See generally* https://luminati.io/.

13. Luminati is generally thought to be the largest—and most expensive—company in the proxy marketplace.

14. Oxylabs entered the residential proxy market after Luminati and quickly became Luminati's largest competitive threat. Customers chose Oxylabs rather than Luminati for various reasons, including but not limited to Oxylabs' products' affordability, pricing structure, unique IPs, flexible payment structures, and superior customer service and products.

15. EMK announced its acquisition of Luminati in August 2017. *See* https://www.emkcapital.com/emk-acquires-luminati-worlds-largest-ip-proxy-network-brings-transparency-internet/ (announcing EMK's acquisition of "a majority shareholding in Luminati, the enterprise proxy network division of Hola" and that the founders of Hola "will retain a significant stake in the company"). EMK's representatives sit on and control Luminati's Board of Directors. One of EMK's representatives is Luminati's Chairman.

16. After Oxylabs entered the residential proxy market, EMK attempted to acquire Oxylabs. When EMK's acquisition attempt failed, EMK caused Luminati to bring meritless patent-infringement lawsuits against Oxylabs and otherwise engage in the conduct described herein.

17. According to EMK, its governance role is an essential component in its portfolio

companies' value creation.

18. Luminati, at EMK's control and direction, has continuously threatened Oxylabs' customers, potential customers, and business partners with meritless allegations of patent infringement. Luminati has also advised Oxylabs' customers, potential customers, and business partners that Oxylabs' products are illegal to use and that it is illegal to sell products using Oxylabs' software development kits. Luminati further threatened to bring patent-infringement lawsuits against Oxylabs' customers and partners if such customers and partners continue to do business with Oxylabs. Luminati also requires (or attempts to require) its customers not to do business with Oxylabs, on account of Oxylabs' purported infringement of Luminati's patents. Luminati has no good-faith basis for such threats, statements, and conduct—in fact, Luminati has made these threats and statements in bad faith because Luminati knows that its patents do not cover Oxylabs' products and/or are invalid.

19. Oxylabs has repeatedly placed Luminati on notice, at least with letters dated September 10, 2019 and March 23, 2020, that Luminati's lawsuits against Oxylabs are meritless. In the First Lawsuit, Oxylabs also served detailed expert reports showing that the Luminati patents-at-issue were not infringed and invalid. Oxylabs also filed a detailed motion for summary judgment of non-infringement, explaining the bases why Oxylabs did not infringe Luminati's patents-at-issue. *See* First Lawsuit, ECF No. 215. Oxylabs further filed an *Alice* motion demonstrating how the patents-in-suit were unpatentable for claiming ineligible subject matter. *See* First Lawsuit, ECF No. 151. And Oxylabs has filed *Alice* motions in the Second Lawsuit and Third Lawsuit demonstrating how the asserted patents in those cases are also unpatentable for claiming ineligible subject matter. *See* Second Lawsuit, ECF No. 20; Third Lawsuit, ECF No. 37. Oxylabs also served on Luminati in the Second Lawsuit hundreds of pages of detailed invalidity contentions and eligibility

contentions demonstrating how the asserted patents in that case are invalid. Oxylabs has further notified Luminati that Oxylabs does not infringe the asserted patents in the Second Lawsuit via the service of detailed non-infringement contentions. Nevertheless, Luminati persists with its meritless patent-infringement claims and statements.

20. In the First Lawsuit, Luminati made several arguments, including with respect to the Supreme Court's *Alice* decision, the doctrine of equivalents, and 35 U.S.C. § 271(g), that were foreclosed by law, including binding Supreme Court and/or Federal Circuit precedent.

21. Luminati has publicized its legal actions in the press and public-relations communications with incorrect statements in order to damage its competitors, including Oxylabs. For example, Luminati has suggested in its public-relations communications that the Court's "approval" of the resolution of the First Lawsuit means that the Court determined what constituted "infringing technology," and that "as a result" of the Court's approval of the resolution of the First Lawsuit, no one other than Luminati may have an offering using "servers and/or Residential proxy nodes located in the United States."

22. Luminati and EMK have also falsely represented the scope of Luminati's patents. For example, Luminati has claimed that its patents cover a "residential" proxy network, when they do not. Luminati has also falsely represented that its patents cover "servers and/or residential proxy nodes located in the United States," when they do not. Luminati has similarly falsely claimed that only Luminati can offer a "residential proxy service," when this is not true. Additionally, Luminati has claimed that it is "the only proxy provider to use super proxies and the only one that has been given permission to use them in the US." This claim is likewise false. EMK has stated that "Luminati's technology and patent portfolio allow Luminati to operate the only mass-scale residential IP proxy network in the world." This statement is false, as Luminati does not have technology or

patents that allow it to operate "the only mass-scale residential IP proxy network in the world," nor can EMK show how Luminati's patents cover a "mass-scale residential IP proxy network." Indeed, a patent does not allow anyone to "operate" anything—instead, a patent provides a right to exclude others from infringing the patent. EMK's motivation for this false claim is to deceive the public, customers, and potential customers.

23. On its "patent marking" webpage, Luminati also lists approximately fifteen United States patents and falsely claims that "[a]ll Luminati's products are covered by the patents[.]" *See* https://luminati.io/patent-marking. This claim is false because, at a minimum, not "all" of Luminati's products are covered by all of the listed patents. As but one example, Luminati's data center proxy product is not covered by one or more of the listed patents as, according to Luminati, at least two of the listed patents allegedly only cover "residential" proxies. Luminati's motivation for falsely claiming that "all" of its products are covered by the listed patents is to deceive the public, customers, and potential customers. The same is true with respect to Luminati's other false claims about its patents.

24. Neither Luminati nor EMK could have had a reasonable belief that Luminati's products were properly marked. Instead, Luminati and EMK made the statements-at-issue regarding Luminati's patents with the intent that the statements would deceive the public.

25. Luminati has falsely accused Oxylabs of committing false advertising, tortious interference, misappropriation of trade secrets, and intentional unauthorized access of a computer system. Oxylabs has not engaged in false advertising, has not tortiously interfered with any contract or relationship, has not misappropriated any trade secret, nor has it engaged in intentional unauthorized access of a computer system. Despite conducting discovery on its false advertising, tortious interference, misappropriation of trade secrets, and intentional unauthorized access of a

computer system claims in the First Lawsuit, and learning that such claims were meritless, Luminati reasserted such claims in the Second Lawsuit (after dismissing them without prejudice in the First Lawsuit).

26. Luminati's patent-infringement lawsuits and related statements are mere shams—i.e., the lawsuits attempt to cover up what is actually no more than an attempt to interfere with the business relationships of Oxylabs. The lawsuits are objectively baseless such that no reasonable litigant could realistically expect success on the merits and such baseless lawsuits conceal an attempt to interfere directly with the business relationships of Oxylabs through the use of the governmental process (as opposed to the outcome of that process) as an anticompetitive weapon.

27. Defendants' motivation for their false statements, meritless threats, and other actionable wrongs addressed by this lawsuit is their desire to harm Oxylabs. For example, Luminati has told marketplace participants that Luminati will "take Oxylabs out of business." Additionally, Luminati and EMK are attempting to weaken Oxylabs so that Luminati and EMK may then acquire Oxylabs at an unjustified and decreased price. Luminati, at EMK's control and direction, has previously brought patent-infringement lawsuits for the purpose of making defendants go out of business. For example, Luminati has previously sued IP Ninja and BI Science and, to date, it appears as if these entities have gone or will go out of the business on account of the lawsuits. This is also Luminati's goal with respect to Oxylabs.

28. Defendants caused their false advertisements and false statements to enter interstate commerce. For example, Defendants' false advertisements and false statements have been distributed through Internet communications and discussions with Oxylabs' customers, potential customers, and business partners.

29. EMK directed or controlled all of Luminati's conduct complained of herein.

Luminati and EMK also entered into one or more agreements concerning the conduct challenged in this lawsuit, including with respect to having Luminati make the assertions and statements at issue herein.

30. Oxylabs has suffered injury due to the conduct complained of herein, including loss of sales, incurring amounts in defending itself from Luminati's claims and statements, lost profits, and/or damages to Oxylabs' goodwill and commercial reputation.

31. All conditions precedent have been performed or have occurred.

32. Oxylabs specifically pleads the applicability of the discovery rule.

## COUNT I
### (UNFAIR COMPETITION AND FALSE ADVERTISING UNDER THE LANHAM ACT)

33. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

34. Defendants made false or misleading statements of fact about one or more products, including Oxylabs' products and Luminati's products.

35. Such statements either deceived or had the capacity to deceive a substantial segment of potential consumers.

36. The deception was material, in that it is likely to influence the consumer's purchasing decision.

37. The products are in interstate commerce.

38. Oxylabs has been or is likely to be injured (including with respect to commercial and competitive injury) as a result of the statements at issue.

## COUNT II
### (FALSE PATENT MARKING)

39. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

11

40. Defendants have marked upon, affixed to, or used in advertising in connection with one or more unpatented articles, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public.

41. Oxylabs has suffered a competitive injury as a result of Defendants' false patent marking.

## COUNT III
### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACT)

42. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

43. Oxylabs has or had valid contracts, including with its customers and/or business partners.

44. Defendants willfully and intentionally interfered with the contracts.

45. The interference proximately caused Oxylabs' injury.

46. Oxylabs incurred actual damage or loss.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS)

47. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

48. There was a reasonable probability that Oxylabs would have entered into a business relationship with a third person, including customers and/or business partners.

49. Defendants intentionally interfered with the relationship.

50. Defendants' conduct was independently tortious or unlawful.

51. The interference proximately caused Oxylabs' injury.

52. Oxylabs suffered actual damage or loss.

## COUNT V
### (BUSINESS DISPARAGEMENT)

53. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

54. Defendants published false and disparaging words about Oxylabs, including its economic interests.

55. Defendants published the words with malice and without privilege.

56. The publication caused special damages, including but not limited to lost revenues and profits with respect to customers and/or business partners who refused to do business with Oxylabs on account of Defendants' communications.

## COUNT VI
### (DEFAMATION)

57. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

58. Defendants published a false and defamatory statement of fact.

59. The statement referred to Oxylabs.

60. With regard to the truth of the statement, Defendants were acting with actual malice, negligent, or are liable without regard to fault.

61. Oxylabs suffered pecuniary injury and/or injury is presumed.

## COUNT VII
### (CONSPIRACY)

62. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

63. Luminati and EMK were members of a combination of two or more persons.

64. The object of the combination was to accomplish (i) an unlawful purpose or (ii) a lawful purpose by unlawful means.

65. The members had a meeting of the minds on the object or course of action.

66. One of the members committed an unlawful, overt act to further the object or course of action.

67. Oxylabs suffered injury as a proximate result of the wrongful act.

## JURY DEMAND

68. Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

69. Oxylabs requests that the Court:

   A. Hold Defendants liable on one or more of Oxylabs' causes of action;

   B. Declare that Defendants' statements and advertisements are false;

   C. Declare that Luminati's products are not covered by all of Luminati's patents;

   D. Grant an injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from continuing to violate Oxylabs' rights, continuing their false advertisements, and continuing to falsely mark Luminati's products with patents that do not cover such products;

   E. Award Oxylabs actual, compensatory, general, special, lost profits, lost revenues, exemplary, and/or punitive damages;

F. Order Defendants to disgorge any monies, gains, profits, and/or advantages that are attributable to the acts complained of herein;

G. Require Defendants to reimburse Oxylabs for corrective advertisements;

H. Award Oxylabs its costs, attorney's fees, and expenses;

I. Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law; and

J. Grant Oxylabs such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: August 13, 2020

Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiffs Teso LT, UAB,*
*Metacluster LT, UAB, and Code200, UAB*

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 13, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service.

STEVEN CALLAHAN