**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB,**<br><br>　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**Luminati Networks Ltd. and EMK Capital LLP,**<br><br>　　　　**Defendants.** | **Civil Action No. 2:20-cv-00073**<br><br>**JURY TRIAL DEMANDED** |

**OXYLABS' RESPONSE TO DEFENDANT LUMINATI**
**NETWORKS LTD.'S MOTION TO DISMISS AMENDED COMPLAINT**

SIEBMAN, FORREST,
BURG & SMITH LLP

MICHAEL C. SMITH

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CRAIG TOLLIVER
GEORGE T. "JORDE" SCOTT

*Counsel for Plaintiffs Teso LT, UAB,*
*Metacluster LT, UAB, and Code200, UAB*

September 11, 2020

# **TABLE OF CONTENTS**

I.     Summary Of The Response ............................................................................ 1

II.    Statement Of The Issues To Be Decided ...................................................... 2

III.   Personal Jurisdiction Exists Over Luminati.................................................. 2

       A.    Legal Standard ..................................................................................... 2

       B.    The Court Has Personal Jurisdiction Over Luminati ........................... 3

             1.    The Court Has Personal Jurisdiction Over Luminati Under Specific
                   Jurisdiction .................................................................................. 4

             2.    The Court Has Personal Jurisdiction Over Luminati Under Rule 4(k)(2) ....... 6

             3.    Alternatively, Jurisdictional Discovery Is Warranted ................... 7

IV.    Oxylabs' Causes Of Action Satisfy The Pleading Requirements...................... 7

       A.    Legal Standard ..................................................................................... 7

       B.    Oxylabs' State-Law Claims Are Not Preempted Under Federal Patent Law ........... 8

       C.    Oxylabs' Claims Are Not Barred By The *Noerr-Pennington* Doctrine ................ 12

       D.    Oxylabs' Causes Of Action State Valid Claims For Relief.................... 17

             1.    Oxylabs Adequately Alleges A Lanham Act Claim ...................... 17

             2.    Oxylabs Adequately Alleges A False Patent Marking Claim ........ 18

             3.    Oxylabs Adequately Alleges Tortious Interference With Existing Contract
                   And Tortious Interference With Prospective Relations ................ 21

             4.    Oxylabs Adequately Alleges A Business Disparagement Claim.................. 24

             5.    Oxylabs Adequately Alleges A Defamation Claim ....................... 25

             6.    Oxylabs Adequately Alleges A Conspiracy Claim ....................... 26

V.     If Any Claim Is Deficient, The Court Should Grant Leave To Amend.......................... 28

VI.    Conclusion ................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Unione Mediterranea Di Sicurta*,
364 F.3d 646 (5th Cir. 2004) ..................................................................6

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*,
986 F.2d 476 (Fed. Cir. 1993)..........................................................24, 25

*Adrain v. Genetec Inc.*,
08-CV-423, 2009 WL 3161386 (E.D. Tex. Sept. 30, 2009)...................11

*AGIS Software Dev. LLC v. HTC Corp.*,
17-CV-00514, 2018 WL 4680557 (E.D. Tex. Sept. 28, 2018)................3

*Apple, Inc. v. Motorola Mobility, Inc.*,
11-CV-178, 2011 WL 7324582 (N.D. Cal. June 7, 2011)......................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................7, 8

*Associated Radio Serv. Co. v. Page Airways, Inc.*,
414 F. Supp. 1088 (N.D. Tex. 1976) ...................................................16

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008)............................................................3

*Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*,
11-CV-883, 2011 WL 4583845 (D. Minn. Sept. 15, 2011)...................20

*Bayou Fleet, Inc. v. Alexander*,
234 F.3d 852 (5th Cir. 2000) ..............................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................7

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
461 U.S. 731 (1983)............................................................................14

*Black v. Acme Mkts., Inc.*,
564 F.2d 681 (5th Cir. 1977) ................................................................2

*Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imports, Inc.*,
888 F. Supp. 2d 718 (M.D.N.C. 2012) .................................................18

*Brinkmeier v. Graco Children's Prods. Inc.*,
767 F. Supp. 2d 488 (D. Del. 2011)....................................................20

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198 (Tex. 2002)................................................................................................22

*Byrd v. Bates*,
    220 F.2d 480 (5th Cir. 1955) ........................................................................................28

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998).....................................................................................16

*Carpenter Tech. v. Allegheny Techs.*,
    646 F. Supp. 2d 726 (E.D. Pa. 2009) ..........................................................................18

*Clontech Labs. Inc. v. Invitrogen Corp.*,
    406 F.3d 1347 (Fed. Cir. 2005).....................................................................................18

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
    417 S.W.3d 909 (Tex. 2013).........................................................................................22

*Conbraco Indus., Inc. v. Mitsubishi Shindoh Co.*,
    14-CV-00368, 2015 WL 3506487 (W.D.N.C. Jan. 30, 2015).................................12

*Constr. Cost Data, LLC v. Gordian Group, Inc.*,
    16-CV-114, 2017 WL 2266993 (S.D. Tex. Apr. 24, 2017)............................13, 14

*Cook Inc. v. Boston Sci. Corp.*,
    01-CV-9479, 2002 WL 335314 (N.D. Ill. Feb. 28, 2002) ......................................14

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984).......................................................................................................27

*Elecs. for Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003).......................................................................................2

*Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*,
    11-CV-317, 2013 WL 12040726 (E.D. Tex. May 7, 2013).....................................12

*Flywheel Fitness, LLC v. Flywheel Sports, Inc.*,
    13-CV-48, 2013 WL 12138589 (E.D. Tex. July 18, 2013) .....................................15

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................................28, 29

*Gearheard v. De Puy Orthopaedics, Inc.*,
    99-CV-1091, 2000 WL 533352 (E.D. La. Mar. 17, 2000) .....................................14

*Gibson Brands, Inc. v. Armadillo Dist. Enters., Inc.*,
    19-CV-00358, 2020 WL 3453164 (E.D. Tex. June 24, 2020).................................22

*GPNE Corp. v. Fleetmatics USA, LLC*,
  13-CV-2049, 2015 WL 730046 (D. Del. Feb. 20, 2015)..................................................13, 18

*Graftech Int'l. Holdings Inc. v. GC&S Co.*,
  12-CV-00720, 2014 WL 12591876 (E.D. Tex. Apr. 8, 2014)..........................................2, 3, 7

*Hadnot v. City of Woodville*,
  10-CV-117, 2011 WL 13221060 (E.D. Tex. Feb. 11, 2011)..................................................26

*Hall v. LVNV Funding, LLC*,
  16-CV-36, 2016 WL 10827464 (E.D. Tex. Aug. 11, 2016)..................................................28

*Hart v. Bayer Corp.*,
  199 F.3d 239 (5th Cir. 2000) ..............................................................................................28

*Hickory Springs Mfg. Co. v. R & D Plastics of Hickory, Ltd.*,
  14-CV-00093, 2015 WL 4430219 (W.D.N.C. July 20, 2015)..........................................13, 18

*Hoffman-La Roche Inc. v. Genpharm Inc.*,
  50 F. Supp. 2d 367 (D.N.J. 1999) ........................................................................................13

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
  153 F.3d 1318 (Fed. Cir. 1998)..............................................................................................8

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
  749 S.W.2d 762 (Tex. 1987)................................................................................................24

*IGT v. All. Gaming Corp.*,
  04-CV-1676, 2006 WL 8441916 (D. Nev. Jan. 10, 2006)................................................14, 15

*In re BP Lubricants USA Inc.*,
  637 F.3d 1307 (Fed. Cir. 2011)............................................................................................20

*In re Lipsky*,
  460 S.W.3d 579 (Tex. 2015)................................................................................................25

*In re Loestrin 24 Fe Antitrust Litig.*,
  433 F. Supp. 3d 274, 315 (D.R.I. 2019)...............................................................................15, 16

*In re Neurontin Antitrust Litig.*,
  02-CV-1390, 2009 WL 2751029 (D.N.J. Aug. 28, 2009) ......................................................13

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  12-MD-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013).............................................16

*Int'l Truck & Engine Corp. v. Quintana*,
  259 F. Supp. 2d 553 (N.D. Tex. 2003) ..................................................................................2

*Johnson v. City of Shelby*,
  135 S. Ct. 346 (2014) ....................................................................................8

*Jones v. Petty-Ray Geophysical Geosource, Inc.*,
  954 F.2d 1061 (5th Cir. 1992) ......................................................................3

*Kelly v. Nichamoff*,
  868 F.3d 371 (5th Cir. 2017) ........................................................................8

*Knoll Pharm. Co., Inc. v. TEVA Pharm. USA, Inc.*,
  01-CV-1646, 2001 WL 1001117 (N.D. Ill. Aug. 24, 2001) ........................15

*L.G. Motorsports, Inc. v. NGMCO, Inc.*,
  11-CV-112, 2012 WL 718603 (E.D. Tex. Mar. 6, 2012) ............................24

*L-3 Commc'ns Integrated Sys., L.P. v. Lockheed Martin Corp.*,
  07-CV-0341, 2008 WL 4391020 (N.D. Tex. Sept. 29, 2008) .....................16

*Laitram Mach., Inc. v. Carnitech A/S*,
  901 F. Supp. 1155 (E.D. La. 1995) .............................................................14

*Leal v. McHugh*,
  731 F.3d 405 (5th Cir. 2013) ........................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................8, 17

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
  263 F.3d 447 (5th Cir. 2001) ......................................................................17

*Luxpro Corp. v. Apple, Inc.*,
  658 F. Supp. 2d 921 (W.D. Ark. 2009) .......................................................14

*Massey v. Armco Steel Co.*,
  652 S.W.2d 932 (Tex. 1983) ......................................................................26

*Mitchell v. E-Z Way Towers, Inc.*,
  269 F.2d 126 (5th Cir. 1959) ......................................................................28

*Mun. Revenue Services, Inc. v. Xspand, Inc.*,
  05-CV-671, 2005 WL 1367416 (M.D. Pa. June 8, 2005) ...........................13

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ......................................................................................7

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) ..................................................................15

*Norix Grp., Inc. v. Corr. Techs., Inc.*,
   17-CV-07914, 2018 WL 3729324 (N.D. Ill. Aug. 6, 2018) ................................................21

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010)...................................................................................3, 5

*Pequignot v. Solo Cup Co.*,
   608 F.3d 1356 (Fed. Cir. 2010)......................................................................................20

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)...................................................................................................13, 14

*RB Rubber Prods., Inc. v. ECORE Int'l, Inc*.,
   11-CV-319, 2012 WL 4068557 (D. Or. Sept. 14, 2012) ................................................20

*Salazar v. HTC Corp.*,
   16-CV-01096, 2018 WL 1310007 (E.D. Tex. Feb. 14, 2018)............................................7

*Sukumar v. Nautilus, Inc.*,
   785 F.3d 1396 (Fed Cir. 2015)........................................................................................21

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009)..........................................................................................6

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
   758 F. Supp. 2d 366 (N.D. Tex. 2010) ..............................................................................5

*Tex. Data Co., L.L.C. v. Target Brands, Inc.*,
   771 F. Supp. 2d 630 (E.D. Tex. 2011)..............................................................................19

*Thurmond v. Compaq Computer Corp.*,
   99-CV-0711, 2000 WL 33795082 (E.D. Tex. Feb. 28, 2000)..........................................23

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005)..........................................................................................2

*TruePosition, Inc. v. Andrew Corp.*,
   507 F. Supp. 2d 447 (D. Del. 2007)................................................................................8, 9

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
   858 F.2d 1075 (5th Cir. 1988) .........................................................................................15

*Wien Air Alaska, Inc. v. Brandt*,
   195 F.3d 208 (5th Cir. 1999) .............................................................................................5

*Wolf v. Cowgirl Tuff Co.*,
   15-CV-1195, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016) ...........................................12

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) ....................................................................4

*Zenith Elecs., LLC v. Sceptre, Inc.*,
    14-CV-05150, 2015 WL 12765633 (C.D. Cal. Feb. 5, 2015) ...................................9

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)............................................................8, 13, 18

*Zhejiang Med. Co. v. Kaneka Corp.*,
    11-CV-1052, 2012 WL 12893418 (S.D. Tex. Aug. 13, 2012) ...........................18

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)............................................................................7

## OTHER AUTHORITIES

2 Moore's Federal Practice § 12.36[3] (3d ed. 2009) ................................................23

Fed. R. Civ. P. 4(k)(2)...........................................................................2, 3, 6

Fed. R. Civ. P. 8 ........................................................................7, 8, 11, 28

Fed. R. Civ. P. 9(b) ...................................................................................11, 23

Fed. R. Civ. P. 12(b) ........................................................................7, 13, 18

Fed. R. Civ. P. 12(c) ...................................................................................12

Fed. R. Civ. P. 12(e) ...................................................................................23, 28

Fed. R. Civ. P. 15(a) ...................................................................................28

Plaintiffs Teso LT, UAB ("Teso"), Metacluster LT, UAB ("Metacluster"), and Code200,

UAB ("Code200") (collectively, "Oxylabs") file this Response to Defendant Luminati Networks

Ltd.'s ("Luminati") Motion to Dismiss Amended Complaint (ECF No. 20) (the "Motion"):

## I.      SUMMARY OF THE RESPONSE

Oxylabs' Amended Complaint (ECF No. 14) ("Complaint") describes how Luminati has

spread false statements and advertisements about Oxylabs, as well as Luminati's allegedly "pa-

tented" technology. The Complaint provides great detail—including through its quotations of

Luminati's advertisements, press releases and communications—in support of Luminati's unfair

competition, false advertisements, defamatory statements, false patent marking, and tortious in-

terference with contract and prospective business relations. The Complaint provides specific

facts regarding Luminati's communications and advertisements that have been sent to Oxylabs'

customers, potential customers, and business partners, as well as the proxy marketplace general-

ly. The Complaint further shows how Luminati uses (meritless) patent-infringement claims to

attempt to stifle competition in furtherance of Luminati's monopolization (and attempted mo-

nopolization) of the residential proxy marketplace. Luminati's advertising campaign and lawsuits

against Oxylabs are not for any proper purpose, but grounded in bad faith designed to weaken

Oxylabs so that Oxylabs will agree to be acquired at a favorable price or go out of business. In

the end, the goal of Luminati's campaign is for Luminati to become the sole provider in the resi-

dential proxy marketplace. Against this backdrop, and as explained in more detail below, all of

Oxylabs' claims state proper claims for relief.

Additionally, Oxylabs' causes of action do not run afoul of the *Noerr-Pennington* doc-

trine and are not preempted by federal patent law because, as described in the Complaint, they

arise out of Luminati's bad-faith actions which are designed to intentionally harm Oxylabs and to

deceive the public, as well as Oxylabs' customers, potential customers and business partners.

Finally, Oxylabs sufficiently establishes that this Court has personal jurisdiction over Luminati, both under specific jurisdiction and Federal Rule of Civil Procedure 4(k)(2), as a result of Luminati's actions and conduct which give rise to the asserted claims. The Court should thus deny the Motion in its entirety.

## II.      STATEMENT OF THE ISSUES TO BE DECIDED

The Motion raises two issues:

(i)       Whether the Court has personal jurisdiction over Luminati; and

(ii)      Whether Oxylabs pleads sufficient facts to state a claim for each of the asserted causes of action.

## III.     PERSONAL JURISDICTION EXISTS OVER LUMINATI

### A.      Legal Standard

"When parties have not conducted jurisdictional discovery, a plaintiff need only make a 'prima facie showing of jurisdiction.'" *Graftech Int'l. Holdings Inc. v. GC&S Co.*, 12-CV-00720, 2014 WL 12591876, at *3 (E.D. Tex. Apr. 8, 2014) (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)). Further, in deciding a motion to dismiss for lack of personal jurisdiction, "the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff" and "accept the uncontroverted allegations in the plaintiff's complaint as true." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282-83 (Fed. Cir. 2005); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "Allegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Any genuine, material

conflicts between the facts established by the parties' evidence are resolved in favor of plaintiff for the purpose of determining whether a *prima facie* case exists. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).

Personal jurisdiction over a foreign defendant can be established by the following three independent grounds: (i) under specific jurisdiction, (ii) under Federal Rule of Civil Procedure 4(k)(2), and (iii) under the stream-of-commerce theory. First, the Court has personal jurisdiction over a foreign defendant when the foreign defendant purposefully directed activities at residents of the forum, the claim arises out of or relates to those activities, and assertion of personal jurisdiction is reasonable and fair. *Nuance*, 626 F.3d at 1231; *see also AGIS Software Dev. LLC v. HTC Corp.*, 17-CV-00514, 2018 WL 4680557, at *2 (E.D. Tex. Sept. 28, 2018) ("Minimum contacts can be found on the basis of . . . specific jurisdiction, or the stream of commerce theory."). Second, the foreign defendant may also be subject to the Court's personal jurisdiction under the Rule 4(k)(2) if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Third, the Court can assert its personal jurisdiction over a foreign defendant when the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Nuance*, 626 F.3d at 1233; *see also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008); *Graftech*, 2014 WL 12591876, at *5.

### B.  The Court Has Personal Jurisdiction Over Luminati

As discussed below, Oxylabs' Complaint pleads numerous facts that provide a sufficient basis for the Court to exercise its personal jurisdiction over Luminati under either specific jurisdiction or Rule 4(k)(2). Alternatively, should the Court determine that Oxylabs has not suffi-

ciently established that the Court has personal jurisdiction over Luminati, Oxylabs requests the opportunity to conduct jurisdiction discovery.

1.   The Court Has Personal Jurisdiction Over Luminati Under Specific Jurisdiction

Oxylabs alleges that specific jurisdiction exists over Luminati for a multitude of reasons, including that Luminati does business and has contacts with the State of Texas that give rise to Oxylabs' asserted claims, and purposefully directed the activities giving rise to Oxylabs' claims toward the State of Texas. In support, Oxylabs alleges, among other things, that Luminati:

- regularly conducts and transacts business throughout the State of Texas and within the Eastern District of Texas via itself and its subsidiaries or affiliates;

- maintains "exit nodes" associated with its residential proxy service within the State of Texas;

- has customers and potential customers in the State of Texas to whom it directed the false advertisements and false statements at issue in this lawsuit through various press releases and communications;

- committed the asserted torts, in whole or in part, within the State of Texas;

- maintains the websites at issue in this lawsuit which it makes available to individuals and entities within the State of Texas;

- filed three sham-patent lawsuits in this forum against Oxylabs; and

- filed numerous other lawsuits in this forum against its other competitors.

Compl. ¶ 8.

As a preliminary matter, Oxylabs' *prima facie* showing of personal jurisdiction over Luminati is uncontroverted as Luminati offers no declaration or other evidence disputing any of these jurisdictional facts. As such, the Court should deny Luminati's personal-jurisdiction challenge for this reason alone. *See, e.g.*, *Wyatt*, 686 F.2d at 282-83 n.13.

Additionally, the jurisdictional allegations contained in the Complaint demonstrate that this Court has specific jurisdiction over Luminati because (i) Luminati purposefully directed rel-

4

evant activities at residents of the forum, (ii) the asserted claims arose out of or relate to those activities, and (iii) the assertion of personal jurisdiction over Luminati is reasonable and fair. *Nuance*, 626 F.3d at 1231. Each of these prongs is satisfied as it is clear from Oxylabs' allegations that the asserted claims arise from the false advertisements and false statements that Luminati purposefully directed to Oxylabs' customers and potential customers within the State of Texas and the lawsuits Luminati filed in this District. Compl. ¶ 8. Further, Luminati's false advertisements and false statements were made via communications, press releases and websites available to individuals and entities within the State of Texas. *Id.* Lastly, as Oxylabs pleads, the exercise of personal jurisdiction over Luminati is fair and reasonable as this District has a substantial interest in adjudicating the lawsuit, especially in view of Luminati's numerous lawsuits filed in this District. *Id.* Oxylabs also has an interest in obtaining convenient and effective relief in this District, where it has (and is) litigating lawsuits filed by Luminati against it. *Id.* Finally, the interstate judicial system also has an interest in resolving this controversy efficiently before this Court, and the shared interests of the states would not be affected by this suit proceeding. *Id.*

"It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (alterations in original) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1547 (Fed. Cir. 1995)). As explained above, Oxylabs has made a *prima facie* showing that Luminati made the false advertisements and false statements at issue in this lawsuit through various press releases and communications which were directed to Texas residents. Such a showing supports the finding that is fair and reasonable to find personal jurisdiction over Luminati. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 377 (N.D. Tex. 2010) ("Texas has an interest in protecting its consumers from consumer confusion or deception, and plaintiffs are suing based on harm to their

goodwill and false advertising affecting the Texas market."). Moreover, Luminati offers no reason to conclude that it will be unduly burdensome or otherwise unfair to defend itself in a forum where the evidence shows its wrongful conduct was directed. Nor does Luminati's status as a foreign entity exonerate it from liability and that fact cannot serve as an excuse for escaping this Court's jurisdiction. Accordingly, exercising personal jurisdiction over Luminati in no way offends traditional notions of fair play and substantial justice.

2.     The Court Has Personal Jurisdiction Over Luminati Under Rule 4(k)(2)

Alternatively, subjecting Luminati to the Court's personal jurisdiction is warranted under Rule 4(k)(2) because Luminati is not subject to jurisdiction in any state's courts of general jurisdiction. Rule 4(k)(2) "serves as a federal long-arm statute" by providing a forum for federal claims when a foreign defendant lacks substantial contacts with any single state but "has sufficient contacts with the United States" as a whole to satisfy due process and justify the application of federal law. *See id.*; *see also Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009) (citing Advisory Comm. Note to the 1993 Amendment Establishing Rule 4(k)(2)).

In its Motion, Luminati does not identify any state where it can be sued. "[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004). Oxylabs, on the other hand, pleads numerous facts supporting personal jurisdiction under Rule 4(k)(2). *See* Compl. ¶ 9. Specifically, Oxylabs stated that each of Luminati's actions identified above in support of specific jurisdiction occurred not only in the State of Texas but within the United States. *Id.* Thus, Luminati has sufficient contacts with the United States as a whole to satisfy due-process standards and justify the application of federal law. Accordingly, this Court may properly exercise jurisdiction over Luminati under Rule 4(k)(2).

6

### 3.   Alternatively, Jurisdictional Discovery Is Warranted

If the Court is not inclined to deny Luminati's Motion under Rule 12(b)(2) outright, Ox-

ylabs respectfully requests that the Court allow Oxylabs to take jurisdictional discovery of Lu-

minati's contacts and activities within the State of Texas and the United States. Such jurisdic-

tional discovery is warranted here because Oxylabs established a "preliminary showing of juris-

diction" by presenting numerous publicly available facts that suggest with reasonable particulari-

ty the possible existence of the requisite contacts. *See Graftech*, 2014 WL 12591876, at *7

(plaintiff should be afforded the opportunity to conduct jurisdictional discovery where there has

been a "preliminary showing of jurisdiction").

## IV.   OXYLABS'   CAUSES   OF   ACTION   SATISFY   THE   PLEADING REQUIREMENTS

### A.   Legal Standard

To state a proper claim, a pleading need only contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the

plaintiff must only "plead factual matter that, if taken as true, states a claim[.]" *Ashcroft v. Iqbal*,

556 U.S. 662, 666 (2009). Detailed factual allegations are *not* required. *Id.* at 678; *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). Instead, accepting the complaint's factual matter as true,

the claim must only be plausible. *Iqbal*, 556 U.S. at 666; *Salazar v. HTC Corp.*, 16-CV-01096,

2018 WL 1310007, at *1 (E.D. Tex. Feb. 14, 2018) ("Plausibility does not mean probabil-

ity[.]").[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1]   On a motion to dismiss, the Court "accepts as true the facts alleged in the complaint."
*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1852 (2017); *Twombly*, 550 U.S. at 555-56 ("a well-pleaded
complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improb-
able, and that a recovery is very remote and unlikely") (citations and quotations omitted); *see
also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance
are dismissals based on a judge's disbelief of a complaint's factual allegations.").

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] *Iqbal*, 556 U.S. at 666. Factual allegations are construed in the plaintiff's favor and pleadings "construed so as to do justice." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017); Fed. R. Civ. P. 8(e). "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citation and quotations omitted).

### B.    Oxylabs' State-Law Claims Are Not Preempted Under Federal Patent Law

The Federal Circuit has stated that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998). Federal patent law likewise preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent. *See, e.g.*, *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). As a result, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.* "Exactly what constitutes bad faith remains to be determined on a case by case basis. Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id.* at 1354.

Courts have denied motions to dismiss state-law claims that address harm through litigation as part of a broader claim of unlawful conduct. In *TruePosition, Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 461 (D. Del. 2007), for example, the court rejected the patentee's argument that

---

[2]      *See also Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("If a plaintiff's allegations, taken as true, are . . . sufficient, then the plaintiff is entitled to an opportunity to prove them.").

state-law claims based on the patentee's standard-setting misconduct were preempted, finding that "[b]ecause defendant's claims relate to 'tortious conduct [i.e., omissions] before standards bodies' and are not, as plaintiff argues, premised upon whether plaintiff asserted its patent rights against defendant in good faith, defendant's claims are not preempted." *Id.* at 461. The court reached this conclusion even though it also determined that the only damages that the defendant could pursue under its fraud claim were those that were "as a result of having to defend the instant litigation (i.e., defendant's litigation expenses and any adverse damages awards)." *Id.* at 465.

Similarly, courts have also recognized that state-law unfair competition claims involving licensing and litigation misconduct could proceed, without any suggestion that such claims were preempted. *See, e.g.*, *Zenith Elecs., LLC v. Sceptre, Inc.*, 14-CV-05150, 2015 WL 12765633, at *6, *9 (C.D. Cal. Feb. 5, 2015) (denying motion to dismiss under unfair-competition statute where the claim included allegation that the patentee's conduct "imposed the costs of defending this lawsuit without first offering a FRAND license"); *Apple, Inc. v. Motorola Mobility, Inc.*, 11-CV-178, 2011 WL 7324582, at *11, *14 (N.D. Cal. June 7, 2011) (denying motion to dismiss claim under unfair-competition statute that included allegations Apple suffered harm through "the expense of multiple patent infringement suits by Motorola").

Here, contrary to Luminati's arguments (Mot. at 15-16), Oxylabs sufficiently pleads that Luminati's wrongful conduct was a result of Luminati's bad faith. Indeed, Oxylabs' allegations establish both objective and subjective bad faith by Luminati. For example, Oxylabs alleges that Luminati has made and continues to make "threats and statements" to Oxylabs' customers, potential customers, and business partners with meritless allegations of patent infringement. Compl. ¶ 18. Oxylabs further alleges that Luminati has advised Oxylabs' customers, potential customers,

and business partners that Oxylabs' products are illegal to use and that it is illegal to sell products using Oxylabs' software development kits. *Id.* Oxylabs explains in the Complaint that it repeatedly wrote Luminati (e.g., by letters dated September 10, 2019 and March 23, 2020) and advised that Luminati's lawsuits against Oxylabs are meritless. *Id.* ¶ 19. Oxylabs also explains that, in defending against Luminati's lawsuits, it has served Luminati with detailed non-infringement contentions, invalidity contentions, eligibility contentions, expert reports, summary judgement motions, and *Alice* motions demonstrating that the patents-at-issue were not infringed and invalid. *Id.*

Nevertheless, Luminati continues to assert its meritless patent-infringement claims and make statements to Oxylabs' customers, potential customers, and business partners alleging that Oxylabs' products are illegal to use and that it is illegal to sell products using Oxylabs' software development kit. *Id.* For instance, Oxylabs specifically alleges that Luminati has publicized its legal actions in the press and public-relations communications with incorrect statements to damage its competitors, including Oxylabs. *Id.* ¶ 21. In the Complaint, Oxylabs quotes numerous examples of communications from Luminati that contain false statements, including that:

- Luminati incorrectly stated that this Court's "approval" of the resolution of the first lawsuit filed by Luminati means that the Court determined what constituted "infringing technology," and that "as a result" of the Court's "approval" of the resolution of the lawsuit, no one other than Luminati may have an offering using "servers and/or Residential proxy nodes located in the United States." *Id.* These statements are false.

- Luminati and EMK falsely represented the scope of Luminati's patents by claiming that Luminati's patents cover a "residential" proxy network (when they do not) and "servers and/or residential proxy nodes located in the United States" (when they do not). *Id.* ¶ 22.

- Luminati falsely claimed that it is "the only proxy provider to use super proxies and the only one that has been given permission to use them in the US." *Id.*

- Luminati wrongly claims that "[a]ll Luminati's products are covered by the patents" identified on its "patent marking" webpage. *Id.* ¶ 23.

Oxylabs further explains how these statements are false. *Id.* ¶¶ 21-23.

Additionally, Oxylabs pleads that (i) "Luminati has made these threats and statements in bad faith because Luminati knows that its patents do not cover Oxylabs' products and/or are invalid," (ii) Luminati's motivation for these false claims and meritless threats is to "deceive the public, customers, and potential customers" and Luminati's "desire to harm Oxylabs", (iii) Luminati's lawsuits are "shams" that are "objectively baseless such that no reasonable litigant could realistically expect success on the merits and such baseless lawsuits conceal an attempt to interfere directly with the business relationships of Oxylabs through the use of the governmental process (as opposed to the outcome of that process) as an anticompetitive weapon", and (iv) Luminati is "attempting to weaken Oxylabs so that Luminati and EMK may then acquire Oxylabs at an unjustified and decreased price."[3] *Id.* ¶¶ 18, 22-24, 26-27. Oxylabs also contends that neither Luminati nor EMK could have a reasonable belief that Luminati's products were properly marked. *Id.* ¶ 24. Instead, Luminati and EMK made the statements-at-issue regarding Luminati's patents with the intent that the statements would deceive the public. *Id.* Oxylabs further explains how Luminati has told marketplace participants that Luminati will "take Oxylabs out of business" and provides examples of how this strategy has apparently succeeded with respect to Luminati's other competitors. *Id.* ¶ 27.

These allegations more than sufficiently plead Luminati's bad faith. For example, in *Adrain v. Genetec Inc.*, 08-CV-423, 2009 WL 3161386, at *3 (E.D. Tex. Sept. 30, 2009), the court found that an allegation that the patentee's "intent was to interfere with the business relationship between PlateScan and Plano" sufficiently supported a claim of bad faith and that, "if PlateScan is unable to provide sufficient facts and evidence demonstrating bad faith, Mr. Adrain

---

[3]   Rule 8 only requires that Oxylabs state a plausible claim for relief. Nevertheless, Oxylabs notes that, even if Rule 9(b) applied (which it does not), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

may move for summary judgment on the issue of preemption." *See also, e.g.*, *Conbraco Indus., Inc. v. Mitsubishi Shindoh Co.*, 14-CV-00368, 2015 WL 3506487, at *3 (W.D.N.C. Jan. 30, 2015) ("Conbraco alleges that Mitsubishi alleged infringement 'without a good faith basis' and despite having conceded to Conbraco's major supplier that its products did not infringe the Patents or were supplied by an authorized dealer. Conbraco also alleges that Mitsubishi's allegations of infringement were 'baseless' and intended to improperly 'intimidat[e]' Conbraco into shifting to the supplier with which Mitsubishi was allied. These allegations adequately plead both objective and subjective bad faith.") (citations omitted)). Thus, Oxylabs sufficiently pleads bad faith, especially at the motion-to-dismiss stage.

### C.    Oxylabs' Claims Are Not Barred By The *Noerr-Pennington* Doctrine

For the same reason that Luminati's preemption argument fails, so too does its *Noerr-Pennington* argument—Luminati's misconduct is part of a broader course of unlawful conduct which is a direct result of Luminati's objective and subjective bad faith. In addition, *Noerr-Pennington* does not preclude claims premised on Luminati's false and misleading communications sent to Oxylabs' customers, potential customers and business partners.

As an initial matter, *Noerr-Pennington* "acts as an affirmative defense," "is more appropriately brought as a motion pursuant to [Rule 12(c) or 56]," and is "inappropriate for a 12(b)(6) determination" where there are significant factual disputes. *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, 11-CV-317, 2013 WL 12040726, at *5 (E.D. Tex. May 7, 2013*); see also Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). Resolution of any *Noerr-Pennington* issues at this stage is inappropriate because Oxylabs' claims raise significant factual disputes. *See, e.g.*, *Wolf v. Cowgirl Tuff Co.*, 15-CV-1195, 2016 WL 4597638, at *9 n.7 (W.D. Tex. Sept. 2, 2016) ("[I]t is only in relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint. . . . The[] [*Noerr-Pennington*] inquiries are typi-

cally only properly analyzed through a consideration of evidence outside of the pleadings . . . and as such, are not appropriately considered in the present Rule 12(b)(6) context.") (citations and quotations omitted). Thus, the Court should not apply the *Noerr-Pennington* doctrine at the motion-to-dismiss phase of the case. *See, e.g.*, *Zenith Elecs. Corp.*, 182 F.3d at 1354; *Mun. Revenue Services, Inc. v. Xspand, Inc.*, 05-CV-671, 2005 WL 1367416, at *2 (M.D. Pa. June 8, 2005) ("Although we may ultimately determine that the *Noerr/Pennington* doctrine has applicability to this case, we are unable to make that determination at this early stage[.]").[4]

In any event, the *Noerr-Pennington* doctrine clearly does not preclude Oxylabs' claims. The doctrine provides that "[t]hose who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). The doctrine does not preclude Oxylabs' asserted claims for two independent reasons.

---

[4]     *See also Constr. Cost Data, LLC v. Gordian Group, Inc.*, 16-CV-114, 2017 WL 2266993, at *6 (S.D. Tex. Apr. 24, 2017) ("[T]he *Noerr-Pennington* defense is typically only properly analyzed through a consideration of evidence outside of the pleadings and as such, [it is usually] not appropriately considered in [a] Rule 12(b)(6) context.") (quotations omitted) (citing cases); *In re Neurontin Antitrust Litig.*, 02-CV-1390, 2009 WL 2751029, at *22 (D.N.J. Aug. 28, 2009) ("[W]hen the predicate facts of an allegedly sham lawsuit are disputed, sham litigation claims should not be decided by the court as a matter of law."); *GPNE Corp. v. Fleetmatics USA, LLC*, 13-CV-2049, 2015 WL 730046, at *4 (D. Del. Feb. 20, 2015) ("Fleetmatics' amended counterclaims sufficiently set forth allegations of bad faith in connection with GPNE's infringement contentions to satisfy the Rule 12(b)(6) standard at this stage of the proceedings."); *Hickory Springs Mfg. Co. v. R & D Plastics of Hickory, Ltd.*, 14-CV-00093, 2015 WL 4430219, at *7-8 (W.D.N.C. July 20, 2015) ("The accused infringer need only plausibly allege bad faith at the pleading stage, not prove it. . . . R & D has alleged [] that HSM's communication about their patent rights was inaccurate, and their allegations baseless. When allegations of infringement are baseless, communication of those allegations is not protected under federal patent law due to the bad faith nature of such communications."); *Hoffman-La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999) ("Reasonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss. Plaintiffs' motion to dismiss . . . on the basis of *Noerr-Pennington* immunity is denied.").

*First*, the *Noerr-Pennington* doctrine does not preclude claims premised on sending false and misleading communications to an opponent's customers, prospective customers, and application developers. *See, e.g.*, *Laitram Mach., Inc. v. Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) ("The *Noerr-Pennington* doctrine does not extend to sending letters to a competitor's customers alleging violation of trade secrets and infringement of patents."); *Cook Inc. v. Boston Sci. Corp.*, 01-CV-9479, 2002 WL 335314, at *2 (N.D. Ill. Feb. 28, 2002) ("Because Count II arises not under the Sherman Act but under the Lanham Act, these cases [i.e., *Noerr* and *Pennington*] and their reasoning are inapposite, and we will not use them to bar Cook's Lanham Act claim."); *Constr. Cost Data, LLC.*, 2017 WL 2266993, at *7 n.5 ("It is not readily apparent that these actions were 'reasonably and normally attendant upon effective litigation,' at least insofar as they were directed to Plaintiffs' customers and business partners or other third parties and were not sufficiently tied to the threatened litigation.").[5]

*Second*, a "sham" exception exists to the *Noerr-Pennington* doctrine. *See, e.g.*, *Prof'l Real Estate Inv'rs*, 508 U.S. at 56; *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of

---

[5]    *See also Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 929 (W.D. Ark. 2009) ("The Court finds that Apple has not shown that its post-litigation conduct of sending warning letters, making threats, and exerting pressure on Luxpro's clients were incidental to the prosecution of the foreign litigation. Also the Court cannot find that Apple's conduct was in anyway related to its right to petition a court. Therefore, the Court will not allow Apple, at this stage in this litigation, immunity under the *Noerr-Pennington* doctrine."); *IGT v. All. Gaming Corp.*, 04-CV-1676, 2006 WL 8441916, at *4 (D. Nev. Jan. 10, 2006) ("According to Defendants' counter-claim, IGT allegedly violated the Lanham Act by issuing a press release regarding the present litigation of alleged patent infringement. The press release was sent out into the marketplace, and its relationship to the actual litigation is a question of fact at best. Issuing press releases about patent litigation may not be squarely rooted in litigation activities. Consequently, *Noerr-Pennington* immunity may not apply."); *Gearheard v. De Puy Orthopaedics, Inc.*, 99-CV-1091, 2000 WL 533352, at *2 (E.D. La. Mar. 17, 2000) ("[A]ctions [that] could encompass attempts to deter potential customers from doing business with plaintiffs . . . are not protected by the *Noerr-Pennington* doctrine.").

speech, baseless litigation is not immunized by the First Amendment right to petition.") (citations omitted); *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, 13-CV-48, 2013 WL 12138589, at *4 (E.D. Tex. July 18, 2013) ("[t]he law is clear that *Noerr-Pennington* does not protect deliberately false or misleading statements") (citation and quotations omitted); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) ("A patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer (the antitrust plaintiff) proves . . . that the infringement suit was a mere sham . . .") (citation and quotations omitted).[6] Luminati acknowledges as much. Mot. at 10 (noting that "sham litigation" is an "exception to *Noerr-Pennington* immunity").[7]

Here, *Noerr-Pennington* does not preclude Oxylabs' claims because Oxylabs' allegations trigger the "sham" litigation exception to *Noerr-Pennington*, thus precluding dismissal of the claims. *See, e.g.*, *IGT*, 2006 WL 8441916, at *4 ("[A]s Defendants allege that IGT acted in bad faith, the counter-claim alleging IGT violated the Lanham Act meets the *Zenith Electronics* standard, and withstands IGT's motion to dismiss [invoking the *Noerr-Pennington* doctrine].").

---

[6]   *See also Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988) ("The 'sham' exception comes into play when the party petitioning the government is not at all serious about the object of that petition, but engages in the petitioning activity merely to inconvenience its competitor. Thus, the sham exception is said to apply when one party has begun litigation not to win that litigation, but rather to force its competitor to waste time and money in defending itself.").

[7]   Instead, Luminati argues that Oxylabs "include[s] no allegations identifying any basis for Luminati's patents being invalid or not infringed, much less any basis for Luminati to purportedly know this to have been the case." Mot. at 11. But the Complaint (at ¶ 19) pleads that Oxylabs placed Luminati on notice of the baseless nature of its claims. *See, e.g.*, *Knoll Pharm. Co., Inc. v. TEVA Pharm. USA, Inc.*, 01-CV-1646, 2001 WL 1001117, at *4 (N.D. Ill. Aug. 24, 2001) ("TEVA has alleged that previous to the filing of this lawsuit, it sent Plaintiffs a letter stating that all six of the claims of the 252 Patent were invalid and unenforceable" such that the sham-litigation exception was satisfied); *In re Loestrin 24 Fe Antitrust Litig.*, 433 F. Supp. 3d 274, 315 (D.R.I. 2019) ("expert testimony" supported conclusion that patent holder could not have believed it would succeed in litigation).

Oxylabs' claims plead detailed facts showing that Luminati has filed sham-patent-infringement lawsuits. *See* Section IV.B, above. In view of the pleaded facts establishing that Luminati's patent-infringement lawsuits and threats were mere shams (i.e., objectively and subjectively baseless), the claims avoid *Noerr-Pennington*. *See, e.g.*, C.*R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington* . . . does not apply[.]").[8]

Additionally, Oxylabs alleges that Luminati's litigation was merely one component of Luminati's broader scheme predicated on false advertising and making defamatory statements to Oxylabs' current and potential clients and business partners, and that this conduct was independently responsible for competitive harm. *See* Section IV.B, above.

Given this, the *Noerr-Pennington* doctrine does not apply to preclude Oxylabs' claims.

---

[8]   *See also L-3 Commc'ns Integrated Sys., L.P. v. Lockheed Martin Corp.*, 07-CV-0341, 2008 WL 4391020, at *9 (N.D. Tex. Sept. 29, 2008) ("[A]t this stage, the Court must take L-3's factual allegations as true and view them in the light most favorable to L-3. Thus, the Court cannot dismiss any of the antitrust claims based on the *Noerr-Pennington* defense at this time. L-3 has pled facts supporting its allegation that Lockheed's litigation is unreasonable and has been brought purely to impede competition from L-3.") (citation omitted); *Associated Radio Serv. Co. v. Page Airways, Inc.*, 414 F. Supp. 1088, 1096 (N.D. Tex. 1976) ("[I]t is alleged that the purpose of Defendants' state prosecutions was to destroy Plaintiffs; there can be no doubt from Plaintiffs['] allegations . . . that Defendants were attempting to manipulate the court system to strangle Plaintiffs' source of funds. . . . [T]he *Noerr-Pennington* doctrine does not extend immunity to such abusive acts[.]"); *In re Loestrin 24 Fe Antitrust Litig.*, 433 F. Supp. 3d 274, 314 (D.R.I. 2019) ("a sham suit to enforce intellectual property rights leads to a loss of *Noerr-Pennington* immunity from antitrust scrutiny") (citation and quotations omitted); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 12-MD-2343, 2013 WL 2181185, at *22 (E.D. Tenn. May 20, 2013) ("Plaintiffs have plausibly alleged Defendants filed sham patent infringement cases—and as noted earlier, filed and maintained sham patent infringement cases—to further their anticompetitive scheme. Accordingly, Defendants are not protected from antitrust immunity under the *Noerr-Pennington* doctrine[.]").

**D.     Oxylabs' Causes Of Action State Valid Claims For Relief**

1.     <u>Oxylabs Adequately Alleges A Lanham Act Claim</u>

To establish a *prima facie* case for false advertising under the Lanham Act, a plaintiff must show that (i) the defendant made a false or misleading statement of fact about a product; (ii) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (iii) the deception is material in that it is likely to influence the consumer's purchasing decision; (iv) the statement entered interstate commerce; and (v) the plaintiff has been or is likely to be injured as a result. *See Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001).

Here, Oxylabs adequately alleges that Luminati has engaged in unfair competition and false advertising through its false and misleading statements about Oxylabs' products. Compl. ¶¶ 18, 21-22, 25-28, 34-38. As noted above, Luminati has falsely advertised to others—including Oxylabs' customers, potential customers, and business partners—that it is illegal to use Oxylabs' products. *See, e.g.*, Section IV.B, above; Compl. ¶ 18. Luminati has also threatened Oxylabs' customers and business partners with litigation if they continue to do business with Oxylabs. *Id.* And Luminati has repeatedly falsely represented the scope of its patents to the marketplace. *See* Section IV.B, above; Compl. ¶ 22. Oxylabs pleads that these illegal activities, which entered interstate commerce and caused Oxylabs commercial and competitive injury, have been made in bad faith and to deceive the public because Luminati knows or should know that the statements-at-issue are unfounded and not supported. *See* Section IV.B, above; Compl. ¶¶ 18, 22-24, 26-28, 37-38.

Nothing more is required to state a plausible Lanham Act claim. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014) (allegation that Lexmark "directly target[ed] Static Control" when it "falsely advertised that Static Control infringed

17

Lexmark's patents" caused "injury flow[ing] directly from the audience's belief in the disparag-

ing statements" under the Lanham Act); *Zenith Elecs. Corp.*, 182 F.3d at 1343 ("Exzec's claims,

alleging that Elo Touch's conduct in support of its patent rights violate the Lanham Act . . . are

not absolutely barred by the patent or antitrust laws. This is because the protection otherwise af-

forded by the patent laws to a patentee's conduct in enforcing its patent may be lost if the patent-

ee acts in bad faith. The question of whether Exzec can prove bad faith by Elo Touch remains for

the trial court to determine[.]"); *Zhejiang Med. Co. v. Kaneka Corp.*, 11-CV-1052, 2012 WL

12893418, at *6 (S.D. Tex. Aug. 13, 2012) (denying motion to dismiss Lanham Act claim prem-

ised on allegedly false and misleading letters sent to opponent's existing and potential custom-

ers).[9]

### 2.    Oxylabs Adequately Alleges A False Patent Marking Claim

A claim for false marking has two elements: (i) marking an unpatented article; and (ii) in-

tent to deceive the public. *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed.

Cir. 2005) ("According to the statute, when an unpatented article is marked with the word 'pa-

tent' or any word or number that imports that the article is patented, and such marking is for the

---

[9]    *See also GPNE Corp. v. Fleetmatics USA, LLC*, 13-CV-2049, 2015 WL 730046, at *4
(D. Del. Feb. 20, 2015) ("Fleetmatics' amended counterclaims sufficiently set forth allegations
of bad faith in connection with GPNE's infringement contentions to satisfy the Rule 12(b)(6)
standard at this stage of the proceedings."); *Blue Rhino Glob. Sourcing, Inc. v. Well Traveled
Imports, Inc.*, 888 F. Supp. 2d 718, 722 (M.D.N.C. 2012) (allegations of bad-faith enforcement
of patent plausibly stated claim for relief under the Lanham Act); *Hickory Springs Mfg. Co. v. R
& D Plastics of Hickory, Ltd.*, 14-CV-00093, 2015 WL 4430219, at *7-8 (W.D.N.C. July 20,
2015) ("The accused infringer need only plausibly allege bad faith at the pleading stage, not
prove it. . . . R & D has alleged [] that HSM's communication about their patent rights was inac-
curate, and their allegations baseless. When allegations of infringement are baseless, communi-
cation of those allegations is not protected under federal patent law due to the bad faith nature of
such communications."); *Carpenter Tech. v. Allegheny Techs.*, 646 F. Supp. 2d 726, 737 (E.D.
Pa. 2009) (allegations concerning enforcement of patents allegedly obtained by fraud, including
through the sending of letters to opponent's customers or potential customers, held sufficient to
state Lanham Act claim).

purpose of deceiving the public, the fine is invoked."); *see also Tex. Data Co., L.L.C. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 635 (E.D. Tex. 2011) (same). In moving to dismiss Oxylabs' false patent marking claim, Luminati does not dispute that its product is falsely marked. Instead, Luminati contends that Oxylabs has not adequately alleged "facts showing Luminati's intent to deceive the public" and "competitive injury." Mot. at 21-22.

With respect to intent to deceive, when all the factual allegations pled in the Complaint are considered and accepted as true, it can be reasonably inferred that Luminati falsely marked with the requisite deceptive intent. The relevant allegations in the Complaint relating to Luminati's false marking of its products are set forth in paragraphs 23-24 and 40-41. In those paragraphs, Oxylabs identifies the domain name of a Luminati website (https://luminati.io/patent-marking) that lists approximately fifteen United States patents. Compl. ¶ 23. Luminati claims that "[a]ll Luminati's products are covered by the patents[.]" *Id*. Oxylabs explains that this statement is false and provides an example supporting the falsity of the statement. *Id*. ("Luminati's data center proxy product is not covered by one or more of the listed patents as, according to Luminati, at least two of the listed patents allegedly only cover 'residential' proxies."). Thus, all the patents identified at https://luminati.io/patent-marking cannot possibly cover Luminati's data center proxy product. Oxylabs further alleges that Luminati could not have a reasonable belief that Luminati's products were properly marked and that the statements-at-issue regarding Luminati's patents were made with the intent that the statements would deceive the public. *Id*. ¶¶ 24, 40.

The Federal Circuit has found that "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1360 (Fed. Cir. 2010). Although it is possible that a

company may know that its patent marking is false and not violate the statute if it lacked the intent to deceive the public, courts have nonetheless stated that it is "abundantly clear that, to survive a motion to dismiss, a . . . [party] need not plead facts that foreclose the possibility of its not prevailing at trial." *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 495-96 (D. Del. 2011).

Here, Oxylabs' allegations, when accepted as true by the Court, provide the requisite detail from which the Court can reasonably infer that Luminati has falsely marked its products with the requisite intent to deceive. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1312 (Fed. Cir. 2011); *see also RB Rubber Prods., Inc. v. ECORE Int'l, Inc.*, 11-CV-319, 2012 WL 4068557, at *8 (D. Or. Sept. 14, 2012) (reasonable to infer that defendant knew it was "misleading the public" because the marked product was missing an essential element of the claim language). Contrary to Luminati's argument, Oxylabs' allegations are not simply "conclusory" and "generalized allegations" that Luminati acted with an intent to deceive the public. Mot. at 21. Instead, Oxylabs' false marking allegations include specific factual statements regarding a specific Luminati product. Compl. ¶ 23. Indeed, Luminati's prior enforcement efforts, including those against Oxylabs, demonstrate that Luminati must know the scope of its patents. In other words, Luminati's previous enforcement efforts would have given Luminati a "working knowledge" of the scope of its patents and is thus an "'objective indication' that allows the Court to 'reasonably infer that [Luminati] was aware that the patent[s]' did not read on the products at issue." *Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, 11-CV-883, 2011 WL 4583845, at *9 (D. Minn. Sept. 15, 2011) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011)). Accordingly, Oxylabs' allegations are more than sufficient to meet the pleading standards, and the Court should deny Luminati's motion to dismiss.

20

As for Luminati's competitive injury argument, to plead competitive injury for a false marking claim, facts must be plead to plausibly suggest that the injury resulted from competition. *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1402 (Fed Cir. 2015). Luminati completely ignores that Oxylabs pleads facts that Luminati's false patent marking has been made available to "Oxylabs' customers, potential customers, and business partners, as well as the proxy marketplace generally" and is designed to cause Oxylabs to either go out of business or be acquired by Luminati at a favorable price. Compl. ¶¶ 1, 27. In addition, throughout the Complaint, Oxylabs complains of Luminati's repeated (meritless) threats of patent infringement which have been made to Oxylabs and Oxylabs' customers, potential customers, and business partners. *Id.* ¶ 18. The Complaint makes clear Luminati's false patent marking deceives Oxylabs' customers and potential customers. *Id.* ¶ 23. Falsely claiming that Luminati's patents cover data center proxy products (when they do not) also necessarily harms Oxylabs' business as it too sells data center proxies. *Id.* ¶ 11. Finally, Oxylabs specifically pleads that it "has suffered a competitive injury as a result of [Luminati's] false patent marking." *Id.* ¶ 41. Thus, Oxylabs' allegations plausibly suggest a competitive injury as Luminati is attempting to gain a competitive advantage over Oxylabs. *See Norix Grp., Inc. v. Corr. Techs., Inc.*, 17-CV-07914, 2018 WL 3729324, at *4 (N.D. Ill. Aug. 6, 2018) ("A competitive injury means a 'wrongful economic loss caused by a commercial rival, such as . . . 'a disadvantage in a plaintiff's ability to compete with a defendant, caused by a defendant's unfair competition.'").

3.   Oxylabs Adequately Alleges Tortious Interference With Existing Contract And Tortious Interference With Prospective Relations

To prevail on a claim for tortious interference with contract, a party must allege that (i) a valid contract existed; (ii) defendant willfully and intentionally interfered with the contract; (iii) the interference proximately caused plaintiff damage; and (iv) plaintiff suffered actual damage or

loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). To prevail on a claim of tortious interference with prospective business relationships, a party must allege that (i) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (ii) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (iii) the defendant's conduct was independently tortious or unlawful; (iv) the interference proximately caused the plaintiff injury; and (v) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Here, Oxylabs provides sufficient allegations as to each element of its tortious interference claims. *See, e.g.*, Compl. ¶¶ 18, 22-23, 28, 43-46. For example, Oxylabs specifically alleges that Luminati has threatened Oxylabs' existing customers, potential customers, and existing business partners with patent infringement, claiming it is illegal to use Oxylabs' products and that it is illegal to sell products using Oxylabs' software development kits. *Id.* ¶ 18. Oxylabs further alleges that Luminati threatened to bring patent-infringement lawsuits against Oxylabs' customers and partners if such customers and partners continue to do business with Oxylabs. *Id.* Luminati also requires (or attempts to require) its customers not to do business with Oxylabs, on account of Oxylabs' purported infringement of Luminati's patents. *Id.*

Luminati argues that the allegations are insufficient as pled because Oxylabs did not identify any specific contract or actual or potential customers with which Luminati interfered or the nature of such interference. Mot. at 23-24. "If the facts alleged are enough from which to reasonably infer the existence of contracts subject to the interference, then that is sufficient to establish that such a contract exists." *Gibson Brands, Inc. v. Armadillo Dist. Enters., Inc.*, 19-CV-00358, 2020 WL 3453164, at *3 (E.D. Tex. June 24, 2020) (citations and quotations omitted).

22

The detailed allegations addressed above are more than enough to meet this standard.

Moreover, eliciting additional factual details should come through the discovery process. This is especially true where, as here, information is within the defendant's knowledge. *See* 2 Moore's Federal Practice § 12.36[3] (3d ed. 2009) ("If the movant's existing knowledge enables it to file a responsive pleading, the court will often deny the motion even if the pleading arguably fits the 'vague and ambiguous' Rule 12(e) standard."); *see also Thurmond v. Compaq Computer Corp.*, 99-CV-0711, 2000 WL 33795082, at *2 (E.D. Tex. Feb. 28, 2000) ("Suffice it to say that, absent sheer unintelligibility of a complaint, this Court will not grant a Rule 12(e) motion for more definite statement."). As pled, Luminati's tortious interference has occurred through Luminati's communications (including Internet communications) and discussions with Oxylabs' customers and business partners. Compl. ¶¶ 27-28. The Court should not require Oxylabs to plead specific clients who have been exposed to Luminati's false and misleading advertising and communications campaign since this information is necessarily (or least largely) in Luminati's possession.

Finally, with respect to the tortious interference with prospective relations claim, Luminati argues that Oxylabs does not "demonstrate that Luminati's alleged conduct was independently tortious or unlawful." Mot. at 24. In support of this argument, Luminati relies on the incorrect claim that the *Noerr-Pennington* doctrine protects Luminati's rights to enforce its patents through the courts and that Oxylabs' false-marking claim fails to meet the Rule 9(b) requirement. *Id.* As explained above, Luminati's arguments regarding the *Noerr-Pennington* doctrine and false marking are misplaced. *See* Sections IV.C., IV.D.2., above. Oxylabs, therefore, sufficiently pleads independently tortious or unlawful conduct as evidenced by its claims for unfair competition and false advertising under the Lanham Act, false patent marking, tortious inter-

ference with contract, business disparagement, defamation and conspiracy. Indeed, "any inten-
tional invasion of, or interference with, property rights, personal rights, or personal liberty, caus-
ing some injury without just cause or excuse is an actionable tort." *L.G. Motorsports, Inc. v.
NGMCO, Inc.*, 11-CV-112, 2012 WL 718603, at *9 (E.D. Tex. Mar. 6, 2012). Thus, Oxylabs
alleges several independent torts.

In short, Oxylabs' tortious interference with existing contract and tortious interference
with prospective relations claims state plausible and detailed claims for relief. The Court should
find that nothing more is required.

4.    Oxylabs Adequately Alleges A Business Disparagement Claim

Under Texas law, "[t]he general elements of a claim for business disparagement are pub-
lication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special
damages." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). A false accusa-
tion made maliciously and without privilege that a product infringes a patent can constitute a
disparaging statement. *See Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc*.,
986 F.2d 476, 478 (Fed. Cir. 1993).

Luminati claims that the Complaint includes "no allegations identifying disparaging
words, publications from Luminati containing such words, facts supporting the falsity of such
words, or malice behind such words." Mot. at 25. Such claim is simply not correct. Again, the
Complaint provides numerous examples of Luminati publishing disparaging words and includes
direct quotes from Luminati's public-relations communications. *See, e.g.*, Compl. ¶¶ 18, 21-22.
The Complaint also details how Luminati has continuously threatened Oxylabs' customers, po-
tential customers, and business partners with meritless allegations of patent infringement, all in
the process of disparaging Oxylabs' business. *Id.* ¶ 18. The Complaint also makes clear that these
acts were conducted in bad faith, with malice and without privilege. *Id.* ¶¶ 18, 22-24, 26-27, 55.

24

Luminati complains that Oxylabs failed to plead special damages with specificity. But Oxylabs does identify special damages, including but not limited to "lost revenues and profits with respect to customers and/or business partners who refused to do business with Oxylabs on account of [Luminati's] communications." *Id.* ¶¶ 30, 56. Further, it is against Oxylabs' economic interests for its customers to believe that doing business with Oxylabs will subject them to legal liability. *Id.* ¶ 18. Indeed, telling Oxylabs' potential customers and business partners that it is illegal to use and sell Oxylabs' products clearly impugns Oxylabs' business and, therefore, the economic rights of Oxylabs.

In sum, Oxylabs alleges that the false advertisements and false statements made by Luminati, including that Oxylabs' products infringe Luminati's patents, are false and were made maliciously, without privilege, and have proximately caused Oxylabs damages. These allegations are sufficient to defeat Luminati's motion to dismiss for failure to state a claim concerning business disparagement. *See Additive Controls*, 986 F.2d at 478.

5.      Oxylabs Adequately Alleges A Defamation Claim

The elements for defamation include (i) the publication of a statement of fact to a third party, (ii) that was defamatory concerning the plaintiff, (iii) with the requisite degree of fault regarding the truth of the statement (acting with actual malice if the plaintiff was a public official or public figure or negligence if the plaintiff was a private individual) and (iv) damages, unless the defamatory statements are defamatory per se. *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

Similar to its arguments with respect to Oxylabs' business-disparagement claim, Luminati vaguely argues that the Complaint contains insufficient "general and cursory allegations" in support of the defamation claim. Mot. at 27-28. For the same reasons explained in connection with the disparagement claim, Luminati's argument is incorrect.

Here, Oxylabs pleads a plethora of facts demonstrating how Luminati wrongfully defamed Oxylabs, including identifying several publications containing false statements of fact to third parties, that the false statements concern Oxylabs and are defamatory, that Luminati acted with the requisite degree of fault in making the publications, and that the publications damaged Oxylabs. *See* Compl. ¶¶ 18, 21-24, 26-27, 30, 58-61. These allegations are sufficiently pled and provide Luminati fair notice of its defamatory conduct.

### 6.   Oxylabs Adequately Alleges A Conspiracy Claim

"The elements of a common law civil conspiracy are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Hadnot v. City of Woodville*, 10-CV-117, 2011 WL 13221060, at *2 (E.D. Tex. Feb. 11, 2011) (quoting *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)); *Massey v. Armco Steel Co*., 652 S.W.2d 932, 934 (Tex. 1983)).

Oxylabs has made its conspiracy claim clear. Luminati and EMK combined to engage in a campaign to, among other things, spread unethical and false statements in communications and advertisements about Oxylabs, as well as Luminati's allegedly "patented" technology. Compl. ¶¶ 1, 15, 17, 18, 21-23, 25, 28-29, 63-66. These communications were sent to Oxylabs' customers, potential customers, and business partners, as well as the proxy marketplace generally. *Id.* ¶¶ 1, 18, 28. Luminati and EMK also engaged in a plan to file meritless patent-infringement lawsuits against Oxylabs. *Id.* ¶¶ 16, 19, 20, 25, 26. Defendants' motivation for their false statements, meritless threats, and other actionable wrongs addressed by this lawsuit is their desire to harm Oxylabs and to (in Luminati's own words) "take Oxylabs out of business." *Id.* ¶ 27. Defendants are also attempting to weaken Oxylabs so that Luminati and EMK may then acquire Oxylabs at an unjustified and decreased price. *Id.* In the past Luminati and EMK have brought patent-infringement lawsuits for the purpose of making defendants go out of business, including IP Nin-

26

ja and BI Science. *Id.* Oxylabs has suffered injury as a direct and proximate result of these wrongful and overt acts, including loss of sales, incurring amounts in defending itself from Luminati's claims and statements, lost profits, and/or damages to Oxylabs' goodwill and commercial reputation. *Id.* ¶¶ 30, 67. Oxylabs' conspiracy allegations are detailed and specific, not general or conclusory, and address every element of the claim.

Luminati complains that Oxylabs' conspiracy claim cannot stand under the "intra-enterprise conspiracy doctrine." Mot. at 29. Though Luminati does not provide any authority applying the doctrine to the claims asserted here, the doctrine does not apply to Luminati and EMK. The doctrine was not meant to abrogate or preempt common-law conspiracy claims, but rather to clarify that a parent and wholly owned subsidiary are not capable of conspiring with themselves. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). The Supreme Court explained the reasoning of the doctrine:

> ***A parent and its wholly owned subsidiary*** have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If ***a parent and a wholly owned subsidiary*** do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for § 1 scrutiny.

*Id.* at 771 (emphases added).

Here, Luminati is not a wholly owned subsidiary of EMK. The Complaint clearly states that EMK is a majority shareholder of Luminati and that the founders of a different company (Hola) "retain a significant stake in the company." Compl. ¶ 15. Thus, EMK and Luminati are neither a single entity nor in a parent-subsidiary relationship. The intra-conspiracy doctrine does

not apply.[10]

## V.     IF ANY CLAIM IS DEFICIENT, THE COURT SHOULD GRANT LEAVE TO AMEND

Should the Court find any claim deficient, Oxylabs respectfully requests leave to amend.[11] "[A] party may amend its pleading . . . . [with] the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). Here, the underlying facts and circumstances at issue may be a proper subject of relief, and there has been no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182. Nor would Luminati suffer undue prejudice by amendment or futility of amendment, especially considering that this case is in its infancy, discovery has not yet begun, and a case

---

[10]   Throughout its Motion, Luminati reiterates a common argument that the Complaint fails to satisfy Rule 8(a)(2)'s requirement that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Mot. at 1, 10, 16, 17, 19, 22, 24, 25, 26, 28, 30. Luminati wrongly suggests that Oxylabs does not provide Luminati with fair notice of each asserted claim. As explained throughout this brief, each cause of action is supported by specific and detailed factual allegations and shows the resulting harm caused from Luminati's wrongful conduct. Thus, there can be no doubt that Luminati has fair notice of the asserted claims. Luminati also repeatedly argues that Oxylabs must provide a more definitive statement with respect to each asserted claim under Rule 12(e). Mot. at 1, 17, 20, 22, 24, 25, 26, 28, 30. Motions for a more definite statement are generally disfavored. *See Mitchell v. E-Z Way Towers, Inc*., 269 F.2d 126, 132 (5th Cir. 1959); *Hall v. LVNV Funding, LLC*, 16-CV-36, 2016 WL 10827464, at *2 (E.D. Tex. Aug. 11, 2016). Again, as explained herein, each cause of action is sufficiently supported with detailed allegations. Luminati has not (and cannot) show that the Complaint is so lacking in detail to require another pleading.

[11]   *See, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[l]y result in dismissal of the complaint with prejudice to re-filing. Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) ("a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted") (citation and quotations omitted).

schedule is not in place. *Id.* Further, Oxylabs could cure any pleading deficiency by alleging additional facts about Luminati's conduct. As such, the Court should grant leave to replead if it believes any claim is deficient.

## VI.  CONCLUSION

For these reasons, the Court should deny Luminati's Motion.

Dated: September 11, 2020

Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
SIEBMAN, FORREST,
BURG & SMITH LLP
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Teso LT, UAB, Oxysales, UAB,
and Metacluster LT, UAB*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 11, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

STEVEN CALLAHAN