# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB,<br><br>    Plaintiffs,<br><br>    v.<br><br>Luminati Networks Ltd. and EMK Capital LLP,<br><br>    Defendants. | Civil Action No. 2:20-cv-00073<br><br>JURY TRIAL DEMANDED |

## OXYLABS' SUR-REPLY TO LUMINATI'S
## MOTION TO DISMISS AMENDED COMPLAINT

 

SIEBMAN, FORREST,
BURG & SMITH LLP

MICHAEL C. SMITH

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CRAIG TOLLIVER
GEORGE T. "JORDE" SCOTT

*Counsel for Plaintiffs Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB*

September 25, 2020

**TABLE OF CONTENTS**

I. Oxylabs Established Specific Jurisdiction Over Luminati ................................................ 1
    A. Specific Jurisdiction Exists Over Luminati ............................................................ 1
    B. Oxylabs Established Rule 4(k)(2) Personal Jurisdiction Over Luminati ................. 2
II. Oxylabs' Causes Of Action Are Not Federally Preempted Or Barred By The *Noerr-Pennington* Doctrine ..................................................................................................... 3
III. Oxylabs' Causes Of Action State Valid Claims For Relief ............................................... 6
    A. Oxylabs Sufficiently Alleges A Lanham Act Claim ................................................ 6
    B. Oxylabs Sufficiently Alleges A False Patent Marking Claim ................................. 7
    C. Oxylabs Sufficiently Alleges Claims For Tortious Interference ............................. 8
    D. Oxylabs Adequately Alleges A Business Disparagement Claim ............................ 9
    E. Oxylabs Sufficiently Alleges A Defamation Claim ................................................. 9
    F. Oxylabs Sufficiently Alleges A Conspiracy Claim ............................................... 10
IV. Conclusion ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Unione Mediterranea Di Sicurta*,
    364 F.3d 646 (5th Cir. 2004) ........................................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................................6

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) ..........................................................................................................7

*Black v. Acme Markets, Inc.*,
    564 F.2d 681 (5th Cir. 1977) ........................................................................................................1

*Blue Spike, LLC v. Tex. Instruments, Inc.*,
    12-CV-499, 2014 WL 11858195 (E.D. Tex. Mar. 13, 2014) .......................................................1

*Brinkmeier v. Graco Children's Products Inc.*,
    767 F. Supp. 2d 488 (D. Del. 2011) .............................................................................................8

*Constr. Cost Data, LLC v. Gordian Group, Inc.*,
    16-CV-114, 2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) ..........................................................3

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ....................................................................................................................10

*GoForIt Entm't, LLC v. DigiMedia.com L.P.*,
    750 F. Supp. 2d 712 (N.D. Tex. 2010) .........................................................................................4

*Graftech Int'l. Holdings Inc. v. GC&S Co.*,
    12-CV-00720, 2014 WL 12591876 (E.D. Tex. Apr. 8, 2014) ......................................................3

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ........................................................................................................7

*Huawei Techs. Co. v. Yiren Huang*,
    17-CV-00893, 2018 WL 1964180 (E.D. Tex. Apr. 25, 2018) ....................................................10

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir.2011) .................................................................................................7, 8

*Laitram Mach., Inc. v. Carnitech A/S*,
    901 F. Supp. 1155 (E.D. La. 1995) ...............................................................................................4

*Nagravision SA v. Gotech Int'l. Tech. Ltd.*,
    882 F.3d 494 (5th Cir. 2018) ........................................................................................................3

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
    18-CV-00014, 2020 WL 1324733 (E.D. Tex. Mar. 20, 2020) ................................................. 9

*Schlumberger Tech. Corp. v. Pasko*,
    544 S.W.3d 830 (Tex. 2018) ................................................................................................ 10

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
    758 F. Supp. 2d 366 (N.D. Tex. 2010) .................................................................................. 2

*Whiddon v. Chase Home Fin., LLC*,
    666 F. Supp. 2d 681 (E.D. Tex. 2009) .................................................................................. 10

*Woods v. William M. Mercer, Inc.*,
    769 S.W.2d 515 (Tex. 1988) ................................................................................................ 10

Oxylabs' causes of action state valid claims. In its reply brief (ECF No. 23) ("Reply"), Luminati again resorts to arguments that rely on an improperly selective reading of the Amended Complaint's ("Complaint") (ECF No. 14) allegations or misapply relevant law.

## I. OXYLABS ESTABLISHED SPECIFIC JURISDICTION OVER LUMINATI

### A. Specific Jurisdiction Exists Over Luminati

As demonstrated in its Response (ECF No. 22), Oxylabs established that Luminati directs its advertising and marketing efforts to Texas, conducts and transacts business throughout Texas and routinely files lawsuits in Texas.[1] Resp. at 4-6. Indeed, Luminati acknowledges that "it is true that Luminati conducts business in Texas, and would be subject to specific personal jurisdiction for claims arising out of those contacts[.]" Reply at 1-2. What Luminati fails (or is unwilling) to realize is that there is no dispute that Oxylabs' asserted claims against Luminati arose out of or relate to its advertising and marketing efforts, business, and litigation conducted in Texas.

For example, Oxylabs alleges that Luminati made the false advertisements and false statements at issue through press releases and communications directed to Luminati's customers and potential customers in the State of Texas. Compl. ¶ 8. Luminati's relies on *Blue Spike, LLC v. Tex. Instruments, Inc.*, 12-CV-499, 2014 WL 11858195, at *3 (E.D. Tex. Mar. 13, 2014), to suggest that statements on its website are not directed to Texas residents. Reply at 2. But in *Blue Spike*, the Court considered whether a website had sufficient functionality to allow customers to obtain services through the website and concluded that the "website has no features specifically

---

[1] On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent that they are not contradicted by affidavits. *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). In the Complaint, Oxylabs established a *prima facie* showing of personal jurisdiction over Luminati under two independent grounds—specific jurisdiction and Rule 4(k)(2). Luminati has failed to offer any declaration or other evidence disputing Oxylabs' jurisdictional facts. Therefore, Oxylabs' uncontroverted personal-jurisdiction allegations sufficiently establish personal jurisdiction over Luminati.

directed to Texas or intended to solicit Texas customers." *Id*. Here, the focus is, in part, on Luminati's direct advertising and marketing efforts which, as Oxylabs pled, were specifically directed to Texas customers and Texas residents.[2] Compl. ¶ 8. Luminati also ignores the fact that Oxylabs' asserted claims are based, in part, on the false statements Luminati has made in connection with the lawsuits it filed in this District. *Id.* ¶ 21. The asserted claims, therefore, arise out of Luminati's advertising campaign that was directed to Texas residents and lawsuits that Luminati filed in Texas. Accordingly, the Court should find specific jurisdiction over Luminati.[3]

### B.     Oxylabs Established Rule 4(k)(2) Personal Jurisdiction Over Luminati

As pointed out in the Response, subjecting Luminati to the Court's personal jurisdiction is warranted under Rule 4(k)(2) because Luminati, a foreign entity, is not subject to jurisdiction in any court of general jurisdiction. Luminati admits as much in its Reply. Reply at 2 (admitting that Luminati "cannot concede jurisdiction in another district court"). Instead, Luminati claims that its relevant conduct took place in Israel and that it was "directed to the world at large[.]" *Id.*

"[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651

---

[2]    *See, e.g.*, Compl. ¶ 8 ("Luminati . . . has customers in the State of Texas to whom it directed the false advertisements and false statements at issue in this lawsuit"; "[Luminati's] contacts with the State of Texas have also given rise to Oxylabs' claims, including but not limited to the false advertisements and communications at issue in this lawsuit which were directed to individuals and entities located within the State of Texas"; "[Luminati's] press releases and communications at issue in this lawsuit have been sent or directed to individuals and entities located within the State of Texas.").

[3]    Luminati does not rely on the "fair play and substantial justice" factor to avoid the exercise of specific jurisdiction. And Luminati's contention that it is not "at home" in this District is of no relevance. Reply at 1. The case law is clear that Texas has a significant interest in protecting its consumers from the consumer confusion and deception that Oxylabs alleges Luminati has caused from its false advertising and false statements. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 377 (N.D. Tex. 2010) (state has interest in protecting its consumers from consumer confusion or deception). As such, the third factor of the specific-jurisdiction inquiry is also met.

(5th Cir. 2004). This is the case here, especially where Luminati admits that it directed its relevant conduct "to the world at large" (which, of course, includes the United States). Reply at 2. Further, despite Luminati's arguments to the contrary, Oxylabs sufficiently alleged in its Complaint that Luminati's conduct from which the asserted claims arise occurred throughout the United States. *See* Compl. ¶ 9. These allegations support personal jurisdiction under Rule 4(k)(2). And, in any event, Luminati's conclusory arguments do not satisfy *its burden* to "affirmatively establish that [this] court lacked personal jurisdiction under 4(k)(2)." *Nagravision SA v. Gotech Int'l. Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018).[4]

## II. OXYLABS' CAUSES OF ACTION ARE NOT FEDERALLY PREEMPTED OR BARRED BY THE *NOERR-PENNINGTON* DOCTRINE

Luminati argues that the *Noerr-Pennington* doctrine and federal patent law preempt or bar all of Oxylabs' asserted claims because Oxylabs has not plausibly alleged the objective and subjective components of bad faith. Reply at 3-5. Luminati is wrong—Oxylabs' causes of action do not run afoul of the *Noerr-Pennington* doctrine and are not preempted by federal patent law.

*First*, the *Noerr-Pennington* doctrine is an affirmative defense, not something the plaintiff must "plead around" to avoid a motion to dismiss under Rule 12(b)(6). *Constr. Cost Data, LLC v. Gordian Group, Inc.*, 16-CV-114, 2017 WL 2266993, at *6 (S.D. Tex. Apr. 24, 2017) ("[A] plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense."). Thus, it is not necessary for Oxylabs to plead around the *Noerr-Pennington* doctrine. *Second*, as Oxylabs discussed in its Response and Luminati ignores in its Reply, courts do not apply the *Noerr-Pennington* doctrine to preclude claims prem-

---

[4] If the Court finds that Oxylabs has not sufficiently established the Court's personal jurisdiction over Luminati, Oxylabs respectfully requests the opportunity to take jurisdictional discovery. *See Graftech Int'l. Holdings Inc. v. GC&S Co.*, 12-CV-00720, 2014 WL 12591876, at *7 (E.D. Tex. Apr. 8, 2014) (court should allow plaintiff jurisdictional discovery where there has been a "preliminary showing of jurisdiction").

3

ised on sending false and misleading communications to an opponent's customers, prospective customers, and application developers. *See, e.g., Laitram Mach., Inc. v. Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) ("The *Noerr-Pennington* doctrine does not extend to sending letters to a competitor's customers alleging violation of trade secrets and infringement of patents."). *Third*, Oxylabs' allegations easily meet the "sham" litigation exception to *Noerr-Pennington* doctrine, thus precluding dismissal of the claims. *See, e.g.*, *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 742 (N.D. Tex. 2010) ("*Noerr-Pennington* immunity does not extend to conduct that is in fact a mere sham to cover what is nothing more than an attempt to interfere directly with business relationships of a competitor.") (citations omitted)).

In its Reply, Luminati continues to rely on a selective reading of what Oxylabs has actually pled. For instance, Luminati argues that Oxylabs has not plausibly alleged objective bad faith. Reply at 3. Luminati also incredibly contends that Oxylabs' allegations do not meet the required subjective bad-faith requirement. *Id.* at 5.

Contrary to Luminati's arguments, Oxylabs' allegations are not deficient. Rather, the Complaint illustrated, in detailed fashion, the underlying facts and knowledge possessed by Luminati that readily establish that Luminati is making objectively baseless threats to Oxylabs' customers, potential customers, and business partners, including baseless threats of litigation. Oxylabs' allegations include, for example:

- Luminati (i) threatened Oxylabs' customers, potential customers, and business partners with meritless allegations of patent infringement and (ii) advised Oxylabs' customers, potential customers, and business partners that Oxylabs' products are illegal to use and that it is illegal to sell products using Oxylabs' software development kits. Compl. ¶ 18.

- Luminati misrepresented that this Court's "approval" of the resolution of the first lawsuit filed by Luminati means that the Court determined what constituted "infringing technology," and that "as a result" of the Court's "approval" of the resolution of the lawsuit, no one other than Luminati may have an offering using "servers and/or Residential proxy nodes located in the United States." *Id.* ¶ 21.

- Luminati falsely represented the scope of Luminati's patents by claiming that Luminati's patents cover a "residential" proxy network and "servers and/or residential proxy nodes located in the United States." *Id.* ¶ 22.

- Luminati falsely claimed that it is "the only proxy provider to use super proxies and the only one that has been given permission to use them in the US." *Id.*

- Luminati wrongly claims that "[a]ll Luminati's products are covered by the patents" identified on its "patent marking" webpage. *Id.* ¶ 23.

Oxylabs further alleged that "Luminati has no good-faith basis for such threats, statements, and conduct—in fact, Luminati has made these threats and statements in bad faith because Luminati knows that its patents do not cover Oxylabs' products and/or are invalid." *Id.* ¶ 18. Additionally, Oxylabs pleads that Luminati knows its threats and statements are untrue as Oxylabs has served Luminati with detailed letters, non-infringement contentions, invalidity contentions, eligibility contentions, expert reports, summary judgement motions, and *Alice* motions demonstrating that Luminati's patents are not infringed and invalid. *Id.* ¶ 19. Finally, to remove any doubt, Oxylabs alleged that Luminati's lawsuits are "shams" that are "objectively baseless such that no reasonable litigant could realistically expect success on the merits and such baseless lawsuits conceal an attempt to interfere directly with the business relationships of Oxylabs through the use of the governmental process (as opposed to the outcome of that process) as an anticompetitive weapon." *Id.*

Oxylabs also makes clear that the conduct-at-issue is a result of Luminati's subjective bad faith. Although evidence of subjective bad faith is often entirely within the defendant's possession, in addition to the allegations cited above, Oxylabs also specifically alleged that Luminati's motivation for its false statements, meritless threats, and other actionable wrongs addressed by this lawsuit is its desire to harm Oxylabs as evidenced by Luminati telling marketplace participants that Luminati will "take Oxylabs out of business." *Id.* ¶ 27. Indeed, Oxylabs alleged that Luminati has had previous success with this type of strategy with its other competitors. *Id.*

5

In sum, Oxylabs has properly pled facts demonstrating that Luminati's litigation against Oxylabs, as well as the false advertisements, misleading statements and threats directed to Oxylabs' customers, potential customers and business partners, are objectively baseless and motivated by a subjective intent to competitively harm Oxylabs. Oxylabs' claims contain more than enough "factual content" to allow this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accepting as true all of Oxylabs' allegations, as is required at the pleadings stage, Oxylabs has stated a plausible basis for Luminati's bad-faith actions and the application of the "sham litigation" exception to the *Noerr-Pennington* doctrine.[5] As a result, Luminati's claims are neither barred by the *Noerr-Pennington* doctrine nor preempted under federal law.

### III.   OXYLABS' CAUSES OF ACTION STATE VALID CLAIMS FOR RELIEF

#### A.   Oxylabs Sufficiently Alleges A Lanham Act Claim

Luminati argues that Oxylabs "lacks standing under the Lanham Act for failure to plausibly allege a competitive injury." *Id.* at 6. But Luminati then cites to the Complaint which states "Oxylabs has been or is likely to be injured (including with respect to ***commercial and competitive injury***) as a result of the statements at issue." *Id.* (citing Compl. ¶ 38) (emphasis added). Further, the Complaint makes clear that Oxylabs has suffered commercial and competitive injury because of Luminati's unfair competition and false advertising. For example, Oxylabs alleged that it "has suffered injury due to the conduct complained of herein, including loss of sales, incurring amounts in defending itself from Luminati's claims and statements, lost profits, and/or

---

[5] With respect to each of Oxylabs' causes of action, Luminati reiterates its (unfounded) arguments that there has not been a sufficient showing of objective or subjective bad faith and thus each claim is barred and/or preempted. *See* Reply 5-10. The Court should reject Luminati's arguments for the reasons stated above (as well as in Oxylabs' Response (at 8-16)) as it is beyond dispute that Oxylabs has satisfied the pleading requirements for bad faith.

damages to Oxylabs' goodwill and commercial reputation." Compl. ¶ 30. Thus, Oxylabs pleads actual injuries, not speculative injuries as Luminati suggests. These types of injuries—which result from the weakening of a competitive position caused by a competitor's false advertising—fall squarely within the scope of Lanham Act. *See, e.g.*, *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 798 (5th Cir. 2011) ("[P]laintiffs who have suffered an injury that negatively impacts their ability to compete in the marketplace have standing to sue under § 43(a).").

### B.     Oxylabs Sufficiently Alleges A False Patent Marking Claim

Luminati argues that the false-patent-marking claim must be dismissed because the "alleged marking is not false." Reply at 7. Luminati's argument goes to the factual merits of the claim, not whether the claim is sufficiently pled. Courts accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Here, Oxylabs included in the Complaint precisely why the patent marking statement is false and provided an example supporting the falsity of the statement. Specifically, Oxylabs alleged that Luminati represents that "[a]ll Luminati's products are covered by the [listed] patents[.]" Compl. ¶ 23. Oxylabs explained that "[t]his claim is false because, at a minimum, not 'all' of Luminati's products are covered by all of the listed patents. As but one example, Luminati's data center proxy product is not covered by one or more of the listed patents as, according to Luminati, at least two of the listed patents allegedly only cover 'residential' proxies." *Id.*

Luminati next argues that Oxylabs did not plead intent to deceive with particularity. This is not true. To sufficiently plead false-patent marking, "a complaint must . . . provide some objective indication to reasonably infer that the defendant was aware" of the false marking. *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir.2011). Oxylabs alleges that "Luminati's motivation for falsely claiming that 'all' of its products are covered by the listed patents is to deceive the public, customers, and potential customers." *Id.* These allegations are more than suffi-

7

cient to demonstrate Luminati's intent to deceive the public. In fact, courts have accepted mere allegations that a defendant "knew or should have known" that its markings were false as sufficient for purposes of satisfying the intent-to-deceive element at the pleading stage. *See, e.g., Brinkmeier v. Graco Children's Products Inc.*, 767 F. Supp. 2d 488, 497 (D. Del. 2011).

Last, Luminati reiterates its claim that Oxylabs did not appropriately plead competitive injury. But, as addressed above, Luminati's argument fails for its selective reading of the Complaint as it ignores the allegations in Paragraph 30 which clearly allege damages for lost profits and harm to Oxylabs' goodwill and commercial reputation. *See also* Compl. ¶ 41 ("Oxylabs has suffered a competitive injury as a result of Defendants' false patent marking."). For these reasons, Oxylabs has sufficiently pled its false-patent-marking claim.

### C.     Oxylabs Sufficiently Alleges Claims For Tortious Interference

In its Motion, Luminati originally argued that Oxylabs' tortious-interference claims failed because Oxylabs did not identify any specific contract or actual or potential customers that Luminati interfered with (or the nature of such interference) and that Oxylabs failed to "demonstrate that Luminati's alleged conduct was independently tortious or unlawful." Mot. at 23-24. Having successfully dispelled those arguments (*see* Resp. at 22-24), Luminati now complains that Oxylabs' allegations that Luminati "willfully and intentionally interfered with existing or prospective contracts cannot be credited." Reply at 9. But the detailed allegations discussed above that establish bad-faith actions sufficiently demonstrate Luminati's willful and intentional interference. *See* Compl. ¶¶ 18-19, 21-23. 27. Luminati also claims that Oxylabs' allegations of "damage or loss" are insufficient. Reply at 9. Once again, Luminati ignores that Oxylabs specifically described its damages and losses from Luminati's tortious conduct as including loss of sales, lost profits, and damages to Oxylabs' goodwill and commercial reputation. Compl. ¶ 30. Oxylabs' tortious-interference claims therefore state plausible and detailed claims for relief.

### D. Oxylabs Adequately Alleges A Business Disparagement Claim

Contrary to Luminati's argument (Reply at 9), Oxylabs identifies special damages in support of its business-disparagement claim, including "lost revenues and profits with respect to customers and/or business partners who refused to do business with Oxylabs on account of [Luminati's] communications." *Id.* ¶¶ 30, 56. Further, it is against Oxylabs' economic interests for its customers to believe that doing business with Oxylabs will subject them to legal liability. *See id.* ¶ 18. Oxylabs' allegations satisfy the required specificity to survive a Rule 12(b)(6) motion.

### E. Oxylabs Sufficiently Alleges A Defamation Claim

Oxylabs alleges sufficient facts to establish a claim for defamation. Contrary to Luminati's arguments (*see* Reply at 9), Oxylabs does identify specific statements containing false statements that Luminati published to third parties. *See* Compl. ¶¶ 18, 21-24, 26-27, 30, 58-61. In fact, the Complaint even includes direct quotes from Luminati's public-relations communications giving Luminati fair notice of its defamatory conduct. *See, e.g.*, Compl. ¶¶ 21-22. Luminati also argues, for the first time, that the statute of limitations (an affirmative defense) prohibits the defamation claim. While Luminati cannot raise new arguments in its Reply such that this argument is improper,[6] and Oxylabs' pleading of the discovery rule (*see* Compl. ¶ 32) would pre-

---

[6] *See, e.g.*, *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 18-CV-00014, 2020 WL 1324733, at *8 (E.D. Tex. Mar. 20, 2020) ("The law of the Fifth Circuit is clear: 'Arguments raised for the first time in a reply brief are waived.'") (citing and quoting *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (2015)).

clude the defense on a motion to dismiss in any event,[7] even Luminati concedes that some of the facts giving rise to the defamation claim occurred within the statute of limitations. Reply at 10 ("[M]ost of the conduct described in the [Complaint] . . . is time-barred."). Simply put, Luminati's new statute-of-limitations argument is thus (i) waived and (ii) meritless.

        F.        **Oxylabs Sufficiently Alleges A Conspiracy Claim**

As explained in Oxylabs' Response (at 26-27), the Complaint provides great detail concerning how Luminati and EMK combined to engage in a campaign to spread unethical and false statements in communications and advertisements about Oxylabs, as well as Luminati's allegedly "patented" technology, for the purpose of forcing Oxylabs out of business. Compl. ¶¶ 1, 15, 17, 18, 21-23, 25, 28-29, 63-66. These allegations sufficiently establish a meeting of the minds. Moreover, the intra-conspiracy doctrine does not apply because EMK and Luminati are neither a single entity nor in a parent-subsidiary relationship. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). Finally, Luminati's argument that Oxylabs did not sufficiently allege a competitive injury fails for the reasons previously discussed above. *See* Section III.A.[8]

**IV.    CONCLUSION**

For these reasons, the Court should deny Luminati's Motion.

---

    [7]    When a plaintiff pleads the discovery rule, the defendant has the burden to negate it. *See, e.g.*, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) ("In cases in which the plaintiff pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the rule."); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988) (same); *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 689 (E.D. Tex. 2009) ("When asserting a limitations defense at the pleading stage, the defendant's burden to establish the accrual date includes negating the applicability of the discovery rule."); *Huawei Techs. Co. v. Yiren Huang*, 17-CV-00893, 2018 WL 1964180, at *10 (E.D. Tex. Apr. 25, 2018) (on motion to dismiss, defendant bears the burden of disproving application of the discovery rule). Luminati does not address the discovery rule, much less negate it.

    [8]    Should the Court find any claim deficient, Oxylabs respectfully requests leave to amend.

| | |
|---|---|
| Dated: September 25, 2020 | Respectfully submitted, |

*[signature]*

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB*

### CERTIFICATE OF SERVICE

  The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 25, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*[signature]*

STEVEN CALLAHAN