**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TESO LT, UAB, METACLUSTER LT, UAB, CODE200, UAB, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:20-CV-00073-JRG |
| LUMINATI NETWORKS LTD., EMK CAPITAL, LLP, | § § § | **FILED UNDER SEAL** |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Luminati Networks Ltd.'s ("Defendant" or "Luminati") Motion to Dismiss Amended Complaint (the "Motion"). (Dkt. No. 20). The Court set the Motion for a hearing on November 19, 2020.[1] However, at the hearing, counsel for Defendant and Plaintiffs Teso LT, UAB, Metacluster LT, UAB, and Code200, UAB (collectively, "Plaintiffs" or "Teso") declined to present oral argument and indicated their desire to rest on the papers and arguments prepared for the hearing. (*Luminati v. Teso*, Dkt. No. 178 at 85:3-6, 85:15-16.). Having now considered the briefing and arguments presented, the Court is of the opinion that the Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.   BACKGROUND**

On August 13, 2020, Teso filed its Amended Complaint, alleging unfair competition and false advertising, false patent marking, tortious interference with an existing contract, tortious interference with prospective relations, business disparagement, defamation, and conspiracy. (Dkt.

---

[1] The hearing also addressed pending motions in the related case *Luminati Networks Ltd. v. Teso LT, UAB, et al.*, 2:19-CV-00395-JRG ("*Luminati v. Teso*").

No. 14). Thereafter, Luminati filed the Motion under Rule 12 for lack of personal jurisdiction and for failing to satisfy pleading standards. (*See* Dkt. No. 20).

## II.     LEGAL STANDARDS

### A.  Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). It is the plaintiff's burden to establish that personal jurisdiction exists, but the plaintiff only needs to present facts to make out a *prima facie* case supporting such jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Additionally, conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff for the purpose of determining whether a *prima facie* case for personal jurisdiction has been made. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). The rule is well-established that "parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections." *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 459 (5th Cir. 2001) (citing *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991)).

There are two steps to determine whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows,"

the Court only needs to consider the second step of the inquiry. *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945). These contacts may give rise to specific or general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

General jurisdiction applies to a defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4 (1984). Thus, general jurisdiction applies in "only a limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. The Fifth Circuit has also stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Specific jurisdiction is a claim-specific inquiry—meaning that the factual basis for the plaintiff's claim must arise out of or relate to the defendant's substantial contacts with the forum. *Asashi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 109 (1987); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("Is specific personal jurisdiction a claim-specific inquiry?

We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). The Supreme Court has recently reiterated that:

> there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. . . . *What is needed . . . is a connection between the forum and the specific claims at issue*.

*Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919) (internal citations in original omitted) (emphasis added); *see also Walden v. Fiore*, 571 U.S. 277, 284, 290 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State. . . . The proper question is *not* where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.") (emphasis added).

To establish specific jurisdiction over a defendant, the plaintiff must demonstrate: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The plaintiff cannot supply the "only link between the defendant and the forum." *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 194 (5th Cir. 2019) (quoting

4

*Walden*, 571 U.S. at 285). Instead, the "defendant himself" must make deliberate contact with the forum. *Id.* (citing *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382). To determine whether exercise of personal jurisdiction over the defendant would be unfair or unreasonable, the Court considers: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Once a plaintiff has established sufficient minimum contacts with the forum, a defendant must make a "compelling case" that exercise of jurisdiction is unfair and unreasonable. *Dontos v. Vendomation NZ, Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Federal Rule of Civil Procedure 4(k)(2) also permits a Court to exercise personal jurisdiction over a defendant; however, "the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 (Fed. Cir. 2009). Rule 4(k)(2) applies if "'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible[.]'" *Id.* at 1415 (citation omitted). Thus, the Court may not exercise personal jurisdiction over a defendant pursuant to Rule 4(k)(2) if the defendant identifies another state in which the case could have been brought. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

If there is no jurisdiction within a particular state, substantial contacts with the United States as a whole may satisfy Rule 4(k)(2). Fed. R. Civ. P. 4(k)(2); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1295–96 (Fed. Cir. 2009). In the absence of a concession to jurisdiction in another state, the Court may use 4(k)(2) to find personal jurisdiction. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

### B. Stating a Claim for Relief

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a complaint that fails to state a claim upon which relief can be granted. To survive dismissal at this early stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.*

The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see also Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017) ("[M]atters or theories raised in a response are not part of the pleadings."). However, documents attached to a defendant's motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim. *Collins*, 224 F.3d at 498–99.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims of fraud. Where a plaintiff is alleging fraud, the plaintiff must further "state with particularity the

6

circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). In essence, Rule 9(b) requires "the who, what, when, where, and how" of the plaintiff's fraud claim to be stated in the complaint. *Id.* The Fifth Circuit applies Rule 9(b) "with 'bite' and 'without apology.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

### C. *Noerr-Pennington* Immunity

"Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). However, such immunity only applies when the litigation is not a sham. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). There is a two-step test to determine whether the sham litigation exception applies. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Prof'l Real Estate*, 508 U.S. at 60. Only if the first step is satisfied may a court move on to the second, "whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor' through the 'use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.'" *Id.* (quoting *Noerr*, 365 U.S. at 144); *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991).

An assertion of *Noerr-Pennington* immunity is an affirmative defense. *Bayou Fleet v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). "Unless the complaint itself establishes the applicability of a[n] [affirmative] defense . . . a defendant should ordinarily raise [the defense] in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012)

### D. Federal Patent Law Preemption

Federal Circuit law is applied in determining whether state law claims are preempted by patent law. *See Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1325 (Fed. Cir. 2017). Federal law preempts state law in three circumstances: express preemption, field preemption, or conflict preemption. *Id.* (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

"[S]tate tort claims, including tortious interference claims, based on publicizing a patent in the marketplaces are not preempted by the patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). Bad faith has objective and subjective components—there must be a showing that infringement allegations are objectively baseless and subjective bad faith on the patentee's part in enforcing the patent. *800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

### III. DISCUSSION

#### A. Teso Has Adequately Pled Personal Jurisdiction

Luminati argues that Teso's allegations that Luminati "directed the false advertisements and false statements at issue in this lawsuit to customers and potential customers within the State of Texas" and the filing of "three meritless patent-infringement lawsuits against [Teso] in the Eastern District of Texas" are insufficient to meet that burden. (Dkt. No. 20 at 4) (citing Dkt. No.

14 ¶ 8). First, Luminati argues that Teso did not plead sufficient facts to support general jurisdiction; second, Luminati argues that Teso did not plead that Luminati's alleged in-state activities were continuous and systematic and gave rise to Teso's claims, in order to support specific jurisdiction. (*Id.* at 5) (citing *Daimler*, 571 U.S. at 138).

Luminati argues that Teso failed to identify which allegedly false advertisements and false statements were directed to customers in Texas or the United States. (*Id.*) (citing Dkt. No. 14 ¶¶ 8-9). Further, Luminati argues that Teso cannot rely on statements from the litigation filed in this Court under *Noerr-Pennington*. (*Id.*) (citing Dkt. No. 14 ¶¶ 18-27). Luminati's patent marking webpage is not identified as directed to the forum. (*Id.*) (citing Dkt. No. 14 ¶ 23).

Luminati also argues that the fact that it previously initiated litigation in this District does not waive a personal jurisdiction challenge. (*Id.* at 6) (citing *Rozenblat v. Sandia Corp.*, No. 05-1556, 2006 WL 678923 (Fed. Cir. Mar. 17, 2006); *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 594 (E.D. Tex. 2019)).

Teso argues that it has adequately pled that specific jurisdiction exists over Luminati because of Luminati's business and contacts with the State of Texas, and that such contact gave rise to Teso's claims. (Dkt. No. 22 at 4). Among the allegations are that Luminati: (1) regularly conducts and transacts business throughout the State of Texas and within the Eastern District of Texas via itself, subsidiaries, and/or affiliates; (2) maintains "exit nodes" associated with its residential proxy services within the State of Texas; (3) has customers and potential customers within the State of Texas to whom false advertisements and false statements were directed; (4) committed asserted torts at least partly in Texas; (5) maintains websites at issue which are available to those within Texas; (6) filed three sham patent lawsuits in Texas against Teso; and (7) filed numerous other lawsuits in this forum against other competitors. (*Id.*) (citing Dkt. No. 14 ¶ 8).

9

Teso argues that those facts were sufficient to meet the three-prong test from *Nuance Commc'ns, Inc. v. Abby Software House*: (i) purposefully directing activities at the forum; (ii) asserted claims arising out of or relating to those activities; and (iii) the assertion of personal jurisdiction is reasonable and fair. (*Id.* at 4-5) (citing 626 F.3d 1222, 1231 (Fed. Cir. 2010)).

Teso also argues that it has adequately pled personal jurisdiction under Rule 4(k)(2). Luminati did not identify any state where it can be sued, and so long as there is no concession to jurisdiction in another state, a court may use 4(k)(2). (*Id.*) (citing *Adams*, 364 F.3d at 651). Teso pled that each of Luminati's acts supporting specific jurisdiction in Texas occurred in the United States, and therefore, Teso argues, Luminati is subject to 4(k)(2) jurisdiction, if not specific jurisdiction. (*Id.*) (citing Dkt. No. 14 ¶ 9).

The Court finds that Luminati is subject to personal jurisdiction here. The Court is unpersuaded that Luminati has not consented to personal jurisdiction through its many filings in this District (including against Teso),[2] and the cases it cites—*Rozenblat* and *Wapp Tech*—both dealt with situations in which the party challenging jurisdiction was a defendant who appeared before, rather than a plaintiff filing cases in those fora. *Rozenblat*, 2006 WL 678923, at *3 ("Mr. Rozenblat argued before the district court that personal jurisdiction was established because these parties appeared in that court in another action previously filed by Mr. Rozenblat . . . ."); *Wapp Tech*, 406 F. Supp. 3d at 594 ("Defendant was previously sued in this District in an unrelated case,

---

[2] At last count, the Court has seen nine cases in which Luminati was the plaintiff: *Luminati Networks Ltd. v. UAB Tesonet*, 2:18-CV-00299-JRG; *Luminati Networks Ltd. v. BI Science Inc.*, 2:18-CV-00483-JRG; *Luminati Networks Ltd. v. IP Ninja Ltd.*, 2:19-CV-00196-JRG; *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, 2:19-CV-00352-JRG; *Luminati Networks Ltd. v. Teso LT, UAB, et al.*, 2:19-CV-00395-JRG; *Luminati Networks Ltd. v. code200, UAB, et al.*, 2:19-CV-00396-JRG; *Luminati Networks Ltd. v. BI Science (2009) Ltd.*, 2:19-CV-00397-JRG; *Luminati Networks Ltd. v. Telfincom S.A.*, 2:19-CV-00414-JRG; *Luminati Networks Ltd. v. NetNut Ltd.*, 2:20-CV-00188-JRG-RSP.

but did not challenge the Court's exercise of personal jurisdiction in that case."). Moreover, by filing suit in Texas, Luminati has waived any objection to personal jurisdiction. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019) (Filing suit in Texas "would [subject a defendant] to personal jurisdiction."); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (A party bringing claims against parties "not arising out of the same transaction or occurrence" waives a personal jurisdiction challenge).

Even in the absence of waiver, the Court finds that Luminati at the very least directed its contacts to the United States for the purposes of Rule 4(k)(2). Teso's false statement allegations include that Luminati falsely represented the scope of its patents, claiming that the patents cover "servers and/or residential proxy nodes located in the United States," and that Luminati is "the only proxy provider to use super proxies and the only one that has been given permission to use them in the U.S." (Dkt. No. 14 ¶ 22). On its patent marking website, Luminati lists U.S. Patents. (*Id.* ¶ 23). As these statements could not be directed anywhere but the United States, Teso has adequately pled personal jurisdiction under Rule 4(k)(2).

### B. Teso Has Adequately Stated Claims for Relief

Luminati moved to dismiss Teso's claims for failure to state a claim for which relief may be granted based on the following grounds:

(i) Teso's claims relying on Luminati's patent enforcement activities should be dismissed for violating the *Noerr-Pennington* doctrine (Dkt. No. 20 at 7);

(ii) Teso's state law claims are preempted by federal patent law (*Id.* at 13); and

(iii) Teso's Lanham Act, patent marking, tortious interference with existing contract, tortious interference with prospective relations, business disparagement, defamation,

11

and conspiracy claims fail to satisfy the pleading requirements (*Id.* at 16, 20, 22, 24, 25, 26, 28).

### i.   *Noerr-Pennington*

Teso alleges several claims factually based on Luminati's engagement in patent infringement lawsuits and other patent enforcement activity, in particular their unfair competition and false advertising claim (Count I), their tortious interference claims (Counts III and IV), their business disparagement claim (Count V), their defamation claim (Count VI), and their conspiracy claim (Count VII). (*Id.* at 7-8) (citing Dkt. No. 14 ¶¶ 18-22, 24-27). Luminati argues that the *Noerr-Pennington* doctrine protects its right to enforce patents through the courts without being subject to causes of action such as unfair competition, tortious interference, and so forth. (*Id.* at 8) (citing, *e.g.*, *Indus. Models v. SNF, Inc.*, 716 F.App'x 949, 955 (Fed. Cir. 2017); *Fisher*, 667 F.3d at 609; *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1350 (Fed. Cir. 2014)).

Luminati further argues that the sham litigation exception to *Noerr-Pennington* does not apply in this case. (*Id.* at 10). According to Luminati, Teso's allegations are conclusory and merely state that Luminati "knows that its patents do not cover [Teso's] products and/or are invalid" and that its claims are "meritless." (*Id.* at 11-12) (citing Dkt. No. 14 ¶¶ 1, 8-9, 16, 18-19, 25, 27). Teso's only factual support is an expert report and unadjudicated motion for summary judgment from a prior suit between the parties, and non-infringement contentions from the current cases. (*Id.* at 12) (citing Dkt. No. 14 ¶ 19). Luminati argues that, even if Teso pled facts to support the objective baselessness prong, which they did not, they would still need to plead the subjective component of the sham litigation exception, which was not done here. (*Id.* at 13).

In response, Teso contends that Luminati's *Noerr-Pennington* argument fails because Teso pled adequate facts to survive at the motion to dismiss stage. (Dkt. No. 22 at 12-13) (citing, *e.g.*, *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, 11-CV-317, 2013 WL 12040726 at *5 (E.D. Tex. May 7, 2013); *Bayou Fleet*, 234 F.3d at 860; *Wolf v. Cowgirl Tuff Co.*, 15-CV-1195, 2016 WL 4597638 at *9 n.7 (W.D. Tex. Sept. 2, 2016)). Further, Teso argues that *Noerr-Pennington* does not preclude claims based on false and misleading communications to an opponent's customers, potential customers, and application developers. (*Id.* at 14) (citing, *e.g.*, *Laitram Mach., Inc. v. Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995); *Cook Inc. v. Boston Sci. Corp.*, 01-CV-9479, 2002 WL 335314 at *2 (N.D. Ill. Feb. 28, 2002)). Teso also argues that the sham litigation exception to *Noerr-Pennington* applies here. (*Id.* at 14-16).

The Court finds that Teso need not plead around *Noerr-Pennington*, as it is an affirmative defense and thus not grounds for 12(b)(6) dismissal.[3] *See Bayou Fleet*, 234 F.3d at 860. Moreover, given the underlying factual determinations necessary to decide whether the sham patent litigation exception applies, the Court finds it inappropriate to make that decision now. *See Fisher*, 667 F.3d at 609.

### ii. Preemption

Luminati argues that Teso's state law claims in Counts III-VII are preempted by federal patent law. For reasons similar to those outlined above in the discussion of *Noerr-Pennington*, Luminati contends that Teso failed to plead bad faith, and therefore its state law claims in Counts III-VII are preempted. (*Id.* at 15-16).

---

[3] For similar reasons, the Court denied Luminati's Motion to Dismiss Teso's counterclaims in the sibling case. (*Luminati v. Teso*, Dkt. No. 178 at 86:9-15.).

13

In response, Teso argues that courts have denied motions to dismiss state law claims addressing harm through litigation as part of a broader claim of unlawful conduct. (Dkt. No. 22 at 8) (citing *TruePosition, Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 461 (D. Del. 2007)). Additionally, Teso points to other courts which have recognized that state law unfair competition claims involving licensing and litigation misconduct could proceed without preemption. (*Id.* at 9) (citing *Zenith Elecs., LLC v. Sceptre, Inc.*, 14-CV-05150, 2015 WL 12765633 at *6, *9 (C.D. Cal. Feb. 5, 2015); *Apple, Inc. v. Motorola Mobility, Inc.*, 11-CV-178, 2011 WL 7324582 at *11, *14 (N.D. Cal. June 7, 2011)).

Teso argues that it sufficiently pled Luminati's bad faith, both objectively and subjectively. For instance, Teso alleges that Luminati has made and continues to make threats and statements to Teso's customers, potential customers, and business partners regarding meritless patent infringement allegations. (*Id.*) (citing Dkt. No. 14 ¶ 18). Teso also alleges that Luminati told customers, potential customers, and business partners that Teso's products are illegal to use and sell. (*Id.* at 9-10). Teso argues that it has put Luminati on notice of its meritless allegations, but Luminati still makes these statements. (*Id.* at 10). Ultimately, Teso alleges, Luminati is using these baseless statements and litigation to drive Teso out of business so Luminati may acquire it at a reduced price. (*Id.* at 11) (citing Dkt. No. 14 ¶¶ 18, 22-24, 26-27). Teso argues that such allegations more than adequately plead bad faith to survive a motion to dismiss. (*Id.* at 11-12) (citing *Adrain v. Genetec Inc.*, 08-CV-423, 2009 WL 3161386 at *3 (E.D. Tex. Sept. 30, 2009); *Conbraco Indus., Inc. v. Mitsubishi Shindoh Co.*, 14-CV-368, 2015 WL 3506487 at *3 (W.D.N.C. Jan. 30, 2015)).

The Court finds that Teso's state law claims should not be dismissed at this time. Teso's Complaint pleads bad faith. Luminati's interpretation would require Teso to *prove* bad faith at the pleading stage of the case. The Court also notes the similarity of the preemption bad faith analysis

to the *Noerr-Pennington* analysis—particularly, that objective baselessness and subjective bad faith must be shown. *Compare Prof'l Real Estate*, 508 U.S. at 60, *with 800 Adept*, 539 F.3d at 1370. For reasons similar to the *Noerr-Pennington* discussion above, the Court finds it premature to decide the ultimate veracity of Teso's allegations at this stage of the case.

### iii. Remaining Grounds

Luminati also moves to dismiss the following of Teso's claims:

- Lanham Act claims;

- Patent marking claims;

- Tortious interference with existing contract and with prospective relations claims;

- Business disparagement claims;

- Defamation claims; and

- Conspiracy claims.

(Dkt. No. 20 at 16, 20, 22, 24, 25, 26, 28). Luminati argues that the foregoing fail to satisfy the pleading requirements of Rules 12(b)(6) and 8(a)(2) and should be dismissed, or Teso should be required to provide a more definite statement under Rule 12(e). (*See id.*).

With regard to Teso's claim for false advertising under the Lanham Act, Luminati argues Teso did not identify a valid factual basis for said claim in the complaint. (*Id.* at 17-18) (citing Dkt. No. 14 ¶¶ 18-27, 33-38). Further, Luminati argues Teso's claim should be dismissed because Teso do not meet the prudential standing requirement of the Lanham Act. (*Id.* at 18) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011)). Luminati also challenges Teso's patent marking claim, arguing that Teso did not plead with particularity facts to support that Luminati made a false statement regarding its patents or that it intended to deceive the public. (*Id.* at 20) (citing Dkt. No. 14 ¶¶ 23, 39-41). Luminati argues that, aside from lacking facts showing

15

an intent to deceive, the claim is subject to dismissal for lack of standing for failure to plead a competitive injury, similar to the Lanham Act claim discussed above. (*Id.* at 21-22).

Next, Luminati argues that Teso's tortious interference with an existing contract claim should be dismissed for failure to satisfy the pleading requirements. Here, Luminati contends that Teso made conclusory allegations in support of its claim, did not identify any contract interfered with or the nature of such interference, and did not identify any customers with specificity. (*Id.* at 23) (citing Dkt. No. 14 ¶¶ 1, 18, 22, 42-46). Similarly, Luminati argues that Teso's tortious interference with prospective relations claim should be dismissed. Again, Luminati argues that Teso merely made conclusory allegations to support this claim. (*Id.* at 24) (citing Dkt. No. 14 ¶¶ 47-52). Luminati argues that Teso did not identify prospective relations allegedly interfered with or that Luminati's alleged conduct was independently tortious or unlawful. (*Id.*).

Luminati further argues that Teso did not sufficiently plead its business disparagement claim. (*Id.* at 25) (citing Dkt. No. 14 ¶¶ 53-56). It asserts that Teso did not allege statements that overcome the federal preemption and *Noerr-Pennington* hurdles, nor did Teso identify disparaging words, publications, facts supporting falsity, or facts supporting malice. (*Id.*) (citing Dkt. No. 14 ¶¶ 18-27). Further, Luminati says Teso did not plead special damages with specificity. (*Id.* at 26). Luminati further contends that Teso's defamation claim did not meet the pleading requirements for similar reasons as the business disparagement claim. (*Id.* at 26-27). Since Teso did not plead more than conclusory facts for a defamation claim, Luminati argues that the claim should be dismissed. (*Id.*) (citing Dkt. No. 14 ¶¶ 57-61).

Finally, Luminati argues that Teso did not plead sufficient facts for its conspiracy claim (*Id.* at 28), saying that Teso's Complaint lacks facts demonstrating a meeting of the minds, one or

more unlawful, overt acts, or specified facts demonstrating injury as a proximate result of the wrongful act. (*Id.* at 29).

Teso argues that it adequately alleged a Lanham Act claim for false or misleading statements. (*Id.* at 17) (citing Dkt. No. 14 ¶¶ 18, 21,22, 25, 28, 34, 38). Teso pled that Luminati falsely advertised, threatened Teso's customers and business partners, falsely represented the scope of its patents, and that such acts were done in bad faith and caused commercial and competitive injury. (*Id.*) (citing Dkt. No. 14 ¶¶ 18, 22-24, 26-28, 37-38). Nothing more is required to plead a plausible Lanham Act claim, Teso argues. (*Id.* at 17-18) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014); *Zenith Elecs.*, 182 F.3d at 1343; *Zhejiang Med. Co. v. Kaneka Corp.*, 11-CV-1052, 2012 WL 12893418 at \*6 (S.D. Tex. Aug. 13, 2012)).

Teso also argues that it adequately pled its false marking claim. Taking all of the factual allegations pled as true, it can be reasonably inferred that Luminati falsely marked with the required deceptive intent. (*Id.* at 19). In particular, Teso identified Luminati's website listing patents and that all of its products are covered by the patents as falsehoods, that Luminati could not have reasonably believed its products were properly marked, and that the statements were made with an intent to deceive the public. (*Id.*) (citing Dkt. No. 14 ¶¶ 23-24, 40-41). Teso also argues that it identified exactly what competitive injury it suffered and how Luminati's acts harmed Teso's ability to compete. (*Id.* at 21) (citing Dkt. No. 14 ¶¶ 1, 11, 18, 23, 27, 41).

Next, Teso argues that it has adequately pled tortious interference with existing contract and tortious interference with prospective relations claims. For example, Teso alleges that Luminati threatened Teso's existing customers, potential customers, and existing business partners with patent infringement suits and that Luminati prohibits its customers from doing business with

17

Teso. (*Id.* at 22) (citing Dkt. No. 14 ¶¶ 18, 22-23, 28, 43-46). Luminati's argument that specific contracts or customers need be identified is not required by the law. (*Id.* at 22-23) (citing *Gibson Brands, Inc. v. Armadillo Dist. Enters., Inc.*, 19-CV-358, 2020 WL 3453164 at *3 (E.D. Tex. June 24, 2020)). Furthermore, additional details are likely to come forth in discovery, especially given that the information here is within defendants' knowledge. (*Id.* at 23). With respect to tortious interference with prospective relations, for many of the same reasons that Teso's claims survive the *Noerr-Pennington* and Rule 9(b) arguments put forth by Luminati, Teso argues that it alleged independent torts. (*Id.* at 23-24).

Regarding Teso's business disparagement claim, Teso argues that multiple examples are pled which show Luminati publishing disparaging words, including direct quotes from Luminati's public relations team. (*Id.* at 24) (citing Dkt. No. 14 ¶¶ 18, 21-22). Additionally, Teso pled that Luminati threatened Teso's customers, potential customers, and business partners. (*Id.*) (citing Dkt. No. 14 ¶ 18). Teso also pled bad faith, malice, and lack of privilege. (*Id.*) (citing Dkt. No. 14 ¶¶ 18, 22-24, 26-27, 55). Teso argues that it did identify special damages in the complaint. (*Id.* at 25) (citing Dkt. No. 14 ¶¶ 18, 30, 56). For similar reasons as the business disparagement claim, Teso argues that sufficient facts were pled to show that Luminati wrongfully defamed them. (*Id.* at 25-26) (citing Dkt. No. 14 ¶¶ 18, 21-24, 26-27, 30, 58-61).

Teso argues that it made its conspiracy claim clear. Teso pled that Defendants Luminati and EMK Capital, LLP ("EMK") combined to spread unethical and false statements about Teso and Luminati's patents. (*Id.* at 26) (citing Dkt. No. 14 ¶¶ 1, 15, 17, 18, 21-23, 25, 28-29, 63-66). Further, Teso alleges that the two conspired to file meritless patent infringement suits and drive Teso out of business, then acquire Teso at a discounted price. (*Id.* at 26-27) (citing Dkt. No. 14 ¶¶ 16, 19, 20, 25-27). Because of the conspiracy, Teso pled that it suffered injuries including lost

sales, incurred attorneys' fees, lost profits, and damage to goodwill and reputation. (*Id.* at 27) (citing Dkt. No. 14 ¶¶ 30, 67). Teso also argues that the intra-conspiracy doctrine does not apply, first because Luminati did not provide authority applying the doctrine to the claims asserted here and second because the doctrine only applies to parents and wholly-owned subsidiaries. (*Id.* at 27).

With respect to Teso's Lanham Act, false marking, tortious interference, and business disparagement claims, the Court finds that Teso has met the minimum pleading standards to survive 12(b)(6). However, Teso's allegations that Luminati and EMK conspired fails under the intra-enterprise doctrine, for similar reasons as its antitrust conspiracy claims in the parallel *Luminati v. Teso* case.[4] "Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between two or more *separate* persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (emphasis added). EMK is the majority owner of Luminati, and Teso's entire theory of its case is based on EMK controlling Luminati's actions. Therefore, an agreement between two separate entities cannot exist here, and the Court finds that Teso's conspiracy claim should be dismissed.

### IV.   CONCLUSION

In light of the foregoing, and for the reasons stated above, the Court finds that Luminati's Motion to Dismiss should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. With respect to Plaintiffs' conspiracy claim, the Motion is **GRANTED**. It is therefore **ORDERED** that Plaintiffs' conspiracy claim in Count VII of its Amended Complaint is **DISMISSED WITH PREJUDICE**. With respect to all other grounds asserted in the Motion, the Motion is **DENIED**.

---

[4] (*See Luminati v. Teso*, Dkt. No. 178 at 86:18-23.).

**So ORDERED and SIGNED this 15th day of December, 2020.**

                                              RODNEY GILSTRAP
                                              UNITED STATES DISTRICT JUDGE